IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> UNI-MARTS, LLC, <br><br> Debtor. | Chapter 11 <br><br> Case No. 08-11037 (MFW) |
| CHARAN TRADING CORP. and VARNI, LLC <br><br> Plaintiffs, <br><br> v. <br><br> UNI-MARTS, LLC and HENRY D. SAHAKIAN, <br><br> Defendants. | Adv. No. 08-51239 (MFW) |

## DEFENDANT HENRY D. SAHAKIAN'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012(b) AND FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) and (6) OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 362(a) AND 11 U.S.C. § 105(a)

Defendant, Henry D. Sahakian, by and through his counsel, Rhoads & Sinon LLP and Bayard, P.A., files the within Motion to Dismiss pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and (6) or, in the alternative, pursuant

to 11 U.S.C. § 362(a) and 11 U.S.C. § 105(a), and avers as follows[1]:

1. On or about August 14, 2008, Plaintiffs Charan Trading Corporation ("Charan") and Varni, LLC, ("Varni") commenced this adversary proceeding against Defendants Uni-Marts, LLC, ("Debtor") and Henry D. Sahakian.

2. Charan is a corporation organized under the laws of the Commonwealth of Pennsylvania, and Varni is a limited liability company organized under the laws of the Commonwealth of Pennsylvania. (Compl., D.I. 1, ¶¶ 1-2.)

3. Debtor is a limited liability company organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in State College, Pennsylvania. (Purchase & Sale Agreement ("Agreement"), Ex. B to Compl., at 1.)

4. Mr. Sahakian is president and a manager of Debtor. (Compl. ¶ 4.)

5. Section 7.11.2 of Debtor's Operating Agreement, in relevant part, provides:

> The Company [Debtor] shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Officers of the Company, the Managers, [and] Members [("Indemnitees")] from and against any losses, claims, damages, liabilities or actions, joint or several, to

---

[1] All facts alleged in the Complaint are accepted as true only for purposes of the instant Motion to Dismiss.

> which such Indemnitees may be subject by virtue of any act performed by such Indemnitee, or omitted to be performed by any such Indemnitee, in connection with the business of the Company . . . and shall reimburse each such Indemnitee for any legal or other expenses reasonably incurred by such Person in connection with . . . defending or preparing to defend any such loss, claim, damage, liability or action . . . .

(Am. & Restated Operating Agreement for Green Valley Acquisition Co., LLC, § 7.11.2, App. to Defendant's Motion to Dismiss, at A46.) Additionally, Debtor shall advance an Indemnitee's litigation expenses. (Id. § 7.11.4, at A47.)

6. Plaintiffs' three-count Complaint purports to assert claims arising from Plaintiffs' purchase from Debtor of a convenience store in Wilkes Barre, Pennsylvania.

7. Sometime between October 19, 2004, and December 30, 2004, Debtor provided Plaintiffs a Property Specific Package ("PSP") setting forth financial information about the Wilkes Barre store. (Id. ¶ 9; see also Ex. A to Compl.) The PSP was signed on behalf of Debtor by its chief financial officer N. Gregory Patrick. (Ex. A to Compl.)

8. On or about December 30, 2004, in reliance on the PSP, Plaintiffs executed the Agreement in which they agreed to pay $3.3 million for the store's operating assets and real estate. (Compl. ¶ 9; see also Ex. B. to Compl.) The

Agreement was signed on behalf of Debtor by its vice president Alex D. Sahakian. (Ex. B. to Compl.)

9. On or about March 8, 2005, Debtor supplemented the PSP by providing to Plaintiffs a document titled "Financial Information Update" ("FIU"). (Compl. ¶ 11; see also Ex. C to Compl.) The FIU purportedly was prepared by NRC Realty Advisors, LLC. (Ex. C to Compl.)

10. Based allegedly on the PSP and FIU, Plaintiffs proceeded to consummate the purchase of the convenience store. (Compl. ¶ 12.) The purchase actually comprised two separate, though related, transactions.

11. On or about April 5, 2005, Charan acquired the store's operating assets for $500,000, plus additional sums for inventory, taxes, and other charges. (Id. ¶ 13.) The settlement statement evidencing the closing was signed on behalf of Debtor by its executive vice president Ara M. Kervandjian. (Ex. D to Compl.)

12. In connection with that acquisition, Charan allegedly executed certain contracts with Debtor, including a Trademark Licensing Agreement and a Fuel Supply Agreement. (Compl. ¶ 14.)

13. On or about July 7, 2005, Varni purchased the real estate in Wilkes Barre for $2,800,000, plus related charges. (Id. ¶ 15)

14. Plaintiffs allege that the PSP and FIU misrepresented and omitted material facts regarding the Wilkes Barre store's financial condition. (Id. ¶ 17.) Specifically, Plaintiffs allege the PSP "omitted important operating costs," (id. ¶ 18), while the PSP and FIU artificially inflated the store's 2004 sales volumes. (Id. ¶ 20.)

15. Plaintiffs allege they justifiably relied on this information. (Id. ¶ 22.) Plaintiffs insist they would have refused to purchase the store on the terms and conditions of the Agreement if Debtor had presented an accurate picture of the store's financial condition. (Id. ¶ 21.)

16. The Complaint alleges further that Debtor breached the contracts with Charan repeatedly and materially. (Id. ¶ 25.)

17. On or about May 29, 2008, Debtor filed in this Court a petition under Chapter 11 of the Bankruptcy Code. (Id. ¶ 26.)

18. Plaintiffs are barred by the automatic stay from bringing a lawsuit against Debtor to recover for its alleged misconduct.

19. Instead, Plaintiffs assert a claim against Mr. Sahakian, styled "Count II: Damages," to recover damages

arising from their acquisition of the convenience store. (Counts I and III are asserted against Debtor.)

20. Plaintiffs do not allege that Mr. Sahakian himself misrepresented or omitted material facts regarding the convenience store's financial condition or otherwise was involved in that transaction or that he was involved in Debtor's alleged contractual breaches.

21. Plaintiffs allege only that "defendants knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading" and that "defendants knew or should have known that purchasers such as plaintiffs and their principals would rely to their detriment on the Debtor's misrepresentations." (Id. ¶¶ 23-24.)

22. Plaintiffs allege that Mr. Sahakian is "personally liable" to them for "substantial monetary damages," (id. ¶ 32), but fail to specify the nature of their claim against Mr. Sahakian.

23. Instead, Plaintiffs allege that "Mr. Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the [c]ontracts and

tortiously inducing [P]laintiffs . . . to purchase the [s]tore." (Id. ¶ 31.)

24. Plaintiffs' Complaint sets forth no facts supporting this conclusory statement.

25. Count II must be dismissed under Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Mr. Sahakian, as set forth more fully in Mr. Sahakian's Brief in Support of his Motion to Dismiss to be filed in accordance with this Court's Local Rules.

26. Pennsylvania law governs the disposition of this matter.

27. Tort claims in Pennsylvania are subject to a two-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5524(7).

28. The Complaint on its face reveals that Plaintiffs' claim against Mr. Sahakian is time-barred because the Complaint was filed more than two years after their claim accrued. Count II, therefore, must be dismissed.

29. Count II must also be dismissed pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) because it fails to plead any facts plausibly suggesting an entitlement to relief under Pennsylvania law, as set forth

more fully in Mr. Sahakian's Brief in Support of his Motion to Dismiss to be filed in accordance with this Court's Local Rules.

30. Alternatively, should this Court conclude that it has personal jurisdiction over Mr. Sahakian, that Plaintiffs' claim is not time barred, and that Plaintiffs have stated a claim against Mr. Sahakian for which relief may be granted, this Court should extend the automatic stay and dismiss Plaintiffs' claim against Mr. Sahakian even though he is a non-debtor.

31. Courts will extend the automatic stay to actions against non-debtors in "unusual circumstances" when there is an identity of interests between the debtor and non-debtor such that the debtor is the "real party defendant," and a judgment against the non-debtor is really a judgment against the debtor.

32. Unusual circumstances exist when the non-debtor defendant is entitled to indemnification from the debtor, or when an adverse judgment against the non-debtor could have a preclusive effect against the debtor in subsequent litigation.

33. As set forth more fully in Mr. Sahakian's Brief in Support of his Motion to Dismiss to be filed in accordance with this Court's Local Rules, the indemnity and

collateral estoppel concerns present in this action constitute "unusual circumstances" that warrant this Court extending the automatic stay and dismissing Count II pursuant to 11 U.S.C. § 362(a) and 11 U.S.C. § 105(a).

WHEREFORE, Defendant Henry D. Sahakian respectfully requests that this Court enter an Order dismissing Count II of the Complaint pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and(6) or, in the alternative, dismissing Count II pursuant to 11 U.S.C. § 362(a) and 11 U.S.C. § 105(a).

Dated: October 3, 2008

BAYARD, P.A.

_____
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

-and-

Charles J. Ferry, Esquire
Robert J. Tribeck, Esquire
Kathryn D. Sallie, Esquire (No. 4600)
Rhoads & Sinon LLP
M&T Bank Building
Twelfth Floor
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146

Counsel to Henry D. Sahakian