## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UNI-MARTS, LLC, | Case No. 08-11037 (MFW) |
| Debtor. | |
| CHARAN TRADING CORP. and VARNI, LLC | |
| Plaintiffs, | |
| v. | Adv. No. 08-51239 (MFW) |
| UNI-MARTS, LLC and HENRY D. SAHAKIAN, | |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANT HENRY D. SAHAKIAN'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012(b) AND FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) and (6) OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 362(a) AND 11 U.S.C. § 105(a)

Dated: October 3, 2008

Eric M. Sutty, Esq. (DE No. 4007)
Mary E. Augustine, Esq. (DE No. 4477)
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Charles J. Ferry, Esq.
Robert J. Tribeck, Esq.
Kathryn D. Sallie, Esq.
(DE No. 4600)
Rhoads & Sinon LLP
M&T Bank Bldg., 12th Fl.
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146

Counsel to Henry D. Sahakian

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................i

TABLE OF AUTHORITIES...............................iii

STATEMENT OF THE NATURE AND STAGE OF THE
PROCEEDINGS.............................................1

SUMMARY OF THE ARGUMENT.............................3

CONCISE STATEMENT OF FACTS.........................5

ARGUMENT.................................................12

    I.   THIS COURT LACKS PERSONAL JURISDICTION
       OVER MR. SAHAKIAN........................12

       A.   STANDARD.............................12

       B.   DISCUSSION...........................13

    II.  PLAINTIFFS' CLAIM AGAINST MR. SAHAKIAN
       IS BARRED BY PENNSYLVANIA'S TWO-YEAR
       STATUTE OF LIMITATIONS....................19

    III. PLAINTIFFS' COMPLAINT MUST BE DISMISSED
       UNDER RULE 12(b)(6) FOR FAILURE TO
       STATE A CLAIM AGAINST MR. SAHAKIAN
       BECAUSE THEIR COMPLAINT PLEADS NO FACTS
       PLAUSIBLY SUGGESTING AN ENTITLEMENT TO
       RELIEF....................................24

       A.   Standard.............................24

       B.   Participation Theory.................26

       C.   Concerted Tortious Conduct...........29

       D.   Tortious Interference with
           Contractual Relations...............31

    IV.  IN THE ALTERNATIVE, THIS COURT SHOULD
       EXTEND THE PROTECTIONS OF THE AUTOMATIC
       STAY TO PLAINTIFFS' ACTION AGAINST MR.
       SAHAKIAN AND DISMISS THE SAME BECAUSE
       "UNUSUAL CIRCUMSTANCES" - INDEMNITY AND
       COLLATERAL ESTOPPEL CONCERNS - WARRANT

EXTENDING THE STAY TO AN ACTION
ASSERTED AGAINST A NON-DEBTOR..............33

CONCLUSION........................................39

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

A.H. Robins Co. v. Piccinin,
  788 F.2d 994 (4th Cir. 1986) ...................34, 35, 36

ACandS, Inc. v. Travelers Cas. & Sur. Co.,
  435 F.3d 252 (3d Cir. 2006) .........................33

Am. Film Techs., Inc. v. Taritero
  (In re Am. Film. Techs., Inc.), 175 B.R. 847 (Bankr.
  D. Del. 1994) .............................26, 35, 37

Anheuser-Busch, Inc. v. Paques, Inc.
  (In re Paques, Inc.), 277 B.R. 615 (Bankr. E.D. Pa.
  2000) .........................................14, 16

AstroPower Liquidating Trust v. Xantrex Tech., Inc.
  (In re AstroPower Liquidating Trust), 335 B.R. 309
  (Bankr. D. Del. 2005) ....................12, 13, 17

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1955 (2007) ...............24, 25, 26, 30

City of Phila. v. Lead Indus. Ass'n,
  994 F.2d 112 (3d Cir. 1993) .........................20

Conley v. Gibson,
  355 U.S. 41, 47 (1957) ..............................25

Eastern Airlines, Inc. v. Rolleston
  (In re Ionosphere Clubs, Inc.), 111 B.R. 423 (Bankr.
  S.D.N.Y. 1990) ......................................35

Finova Capital Corp. v. Cote
  (In re Finova Capital Corp.), 358 B.R. 113 (Bankr.
  D. Del. 2006) ...................................13, 17

Funches v. Household Fin. Consumer Disc. Co.
  (In re Funches), 381 B.R. 471 (Bankr. E.D. Pa. 2008) ...25

Goldin v. Primavera Familienstiftung
  (In re Granite Partners, L.P.), 194 B.R. 318 (Bankr.
  S.D.N.Y. 1996) ......................................36

Hanna v. U.S. Veteran's Admin. Hosp.
   514 F.2d 1092 (3d cir. 1975) .........................19

In re Armstrong World Indus., Inc.,
   432 F.3d 507 (3d Cir. 2005) .........................17

International Shoe Co. v. Washington,
   326 U.S. 310 (1945) .................................13

Klaxon Co. v. Stentor Elec. Mfg. Co.,
   313 U.S. 487 (1940) .................................19

Klingher v. Salci
   (In re Tandycrafts, Inc.), 317 B.R. 287 (Bankr. D.
   Del. 2004) .........................................17

Lazarus Burman Assocs. v. Nat'l Westminster Bank USA
   (In re Lazarus Burman Assocs.), 161 B.R. 891 (Bankr.
   E.D.N.Y. 1993) .....................................38

McCartney v. Integra Nat'l Bank North,
   106 F.3d 506 (3d Cir. 1997) .................33, 34, 38

Oshiver v. Levin, Fishbein, Sedran & Berman,
   38 F.3d 1380 (3d Cir. 1994) .........................19

Phillips v. County of Allegheny,
   515 F.3d 224 (3d Cir. 2008) .........................24

Pickett v. Integrated Health Servs., Inc.
   (In re Integrated Health Servs., Inc.), 304 B.R. 101
   (Bankr. D. Del. 2004) ..............................19

Plessey Precision Metals, Inc. v. Metal Ctr., Inc.
   (In re Metal Ctr., Inc.), 31 B.R. 458 (Bankr. D.
   Conn. 1983) ........................................34

Roberson v. Cityscape Corp.
   (In re Roberson), 262 B.R. 312 (Bankr. E.D. Pa.
   2001) ..............................................19

Sudbury, Inc. v. Escott
   (In re Sudbury, Inc.), 140 B.R. 461 (Bankr. N.D.
   Ohio 1992) .........................................37

STATE CASES

Bala Corp. v. McGlinn,
   144 A. 823, 824 (Pa. 1929) ..........................31

Brandjord v. Hopper,
   688 A.2d 721 (Pa. Super. Ct. 1997) ...................30

Brindley v. Woodland Village Restaurant,
   652 A.2d 865 (Pa. Super. Ct. 1995) ...................27

Crouse v. Cyclops Indus.
   745 A.2d 606 (Pa. 2000) .............................22

Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc.,
   519 A.2d 997 (Pa. Super. Ct. 1987) ...............26, 32

Eagle Int'l Servs., Inc. v. Uni-Marts, LLC,
   No. 11-C-2007 (Ct. Com. Pl. Luzerne County) ...........16

Edelist v. MBNA Am. Bank,
   790 A.2d 1249, 1255-56 (Del. Super. Ct. 2001) .........19

Kingston Coal Co. v. Felton Mining Co.,
   690 A.2d 284, 191 (Pa. Super. Ct. 1997) ..............21

Koken v. Steinberg,
   825 A.2d 723 (Pa. Commw. Ct. 2003) ...................30

Loeffler v. McShane,
   539 A.2d 876 (Pa. Super. Ct. 1988) ...............27, 31

Maier v. Maretti,
   671 A.2d 701 (Pa. Super. Ct. 1995) ...................32

Montanya v. McGonegal,
   757 A.2d 947 (Pa. Super. Ct. 2000) ...................21

Shay v. Flight C Helicopter Servs., Inc.,
   822 A.2d 1 (Pa. Super. Ct. 2003) .....................28

Skipworth ex rel. Williams v. Lead Indus. Ass'n.,
   Inc.,
   690 A.2d 169 (Pa. 1997) .............................29

Sovereign Bank v. Valentino,
   914 A.2d 415 (Pa. Super. Ct. 2006) ...................29

Toy v. Metro. Life Ins. Co.,
    863 A.2d 1 (Pa. Super. Ct. 2004) ...............20, 21, 22

Travelers Indem. Co. v. Lake,
    594 A.2d 38 (Del. 1991) ..............................19

Wicks v. Milzoco Builders, Inc.,
    470 A.2d 86 (Pa. 1983) ...............................27

Wilkerson v. New Media Tech. Charter Sch., Inc.,
    522 F.3d 315, 322 (3d Cir. 2008) ....................,..25


FEDERAL STATUTES

11 U.S.C. § 105.......................................2, 36

11 U.S.C. § 362....................................2, 4, 33

28 U.S.C. § 1334.......................................13


STATE STATUTES

15 Pa. Cons. Stat. Ann. § 8945.........................37

42 Pa. Cons. Stat. Ann. § 5502(a)......................20

42 Pa. Cons. Stat. Ann. § 5524.........................20

## FEDERAL RULES OF PROCEDURE

Fed. R. Bankr. P. 7004.................................13, 16

Fed. R. Bankr. P. 7012..................................2, 12

Fed. R. Bankr. P. 9016....................................16

Fed. R. Civ. P. 4.........................................13

Fed. R. Civ. P. 8.....................................19, 24

Fed. R. Civ. P. 12.....................................2, 12

Fed. R. Civ. P. 45........................................16

## MISCELLANEOUS

Restatement (Second) of Conflict of Laws § 145(2).........19

Restatement (Second) of Torts § 766.......................32

Restatement (Second) of Torts § 876.......................29

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Over three years after they purchased a convenience store in Wilkes Barre, Pennsylvania, from Defendant Uni-Marts, LLC, Plaintiffs Charan Trading Corporation and Varni, LLC, commenced this adversary proceeding on or about August 14, 2008, purporting to assert, among other things, tort claims against Defendant Henry D. Sahakian, president and a manager of Uni-Marts. In a nutshell, Plaintiffs allege that Debtor misrepresented and/or omitted material facts concerning the store's financial condition on which Plaintiffs relied to their detriment in purchasing the store. Plaintiffs also allege that, in connection with this purchase, they entered into certain contracts with Uni-Marts that Uni-Marts has breached repeatedly and materially.

On or about May 29, 2008, Uni-Marts ("Debtor") filed in this Court a petition under Chapter 11 of the Bankruptcy Code. Consequently, Plaintiffs are barred by the automatic stay from bringing a lawsuit against Debtor to recover for its alleged misconduct. To circumvent this impediment, Plaintiffs have sued Mr. Sahakian. In Count II of their Complaint, styled "Damages," Plaintiffs seek to hold Mr. Sahakian personally liable for allegedly "direct[ing] and participat[ing] with and provid[ing] substantial assistance

to the Debtor and others, pursuant to a common plan, in procuring and breaching the [c]ontracts [with Charan] and tortiously inducing [P]laintiffs . . . to purchase the [s]tore." But aside from this conclusory allegation, Plaintiffs have pled no facts supporting even an inference that Mr. Sahakian substantially assisted, directed, or otherwise participated in Debtor's alleged tortious inducement or contractual breaches. At best, Plaintiffs' Complaint shows that Mr. Sahakian, by reason of his position as Debtor's president and manager, may have known that Debtor furnished false or misleading information to Plaintiffs and that Plaintiffs would rely on that information to their detriment. As will be explained below more fully, these allegations are insufficient to sustain a claim against Mr. Sahakian.

On August 14, 2008, this Court issued a summons to Mr. Sahakian requiring his response to the Complaint. In compliance with Federal Rule of Bankruptcy Procedure 7012(a), Mr. Sahakian moves to dismiss Count II of Plaintiffs' Complaint pursuant to Fed. R. Bankr. P. 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and (6) or, in the alternative, pursuant to 11 U.S.C. § 362(a) and 11 U.S.C. § 105(a). Not only does Plaintiffs' Complaint fail to state a claim against Mr. Sahakian for which relief can

be granted, but this Court lacks personal jurisdiction over Mr. Sahakian. Moreover, Count II is barred by Pennsylvania's two-year statute of limitations applicable to tort claims. Finally, and in the alternative, this Court should extend the automatic stay and dismiss Count II because "unusual circumstances" – indemnity and collateral estoppel concerns – justify extending the automatic stay to an action against a non-debtor defendant.

## SUMMARY OF THE ARGUMENT

1. Count II must be dismissed because this Court lacks personal jurisdiction over Mr. Sahakian. In bankruptcy proceedings, personal jurisdiction is delimited by the Due Process Clause of the Fifth Amendment. A defendant must have minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Plaintiffs have failed to make a prima facie showing establishing Mr. Sahakian's minimum contacts with the forum, here the United States. But even if Mr. Sahakian has the requisite contacts with the forum, requiring him to defend against this lawsuit in Delaware is unreasonable. Consideration of several factors – the interests of and burden on Mr. Sahakian, the interests (or lack thereof) of the forum, and the interests of Plaintiffs – warrant a

finding that exercising personal jurisdiction is inconsistent with the Constitution.

2. Plaintiffs' claim against Mr. Sahakian arising from their acquisition of the convenience store is barred by Pennsylvania's two-year statute of limitations applicable to tort claims. Plaintiffs' cause of action accrued no later than July 7, 2005, but this action was not filed until August 14, 2008. Accordingly, Plaintiffs' claim is untimely and must be dismissed.

3. Plaintiffs have failed to state a claim against Mr. Sahakian for which relief may be granted. A complaint filed in federal court states a claim if it contains enough factual allegations (taken as true) to plausibly suggest an entitlement to relief. Although they have not specified the particular claims asserted against Mr. Sahakian, Plaintiffs appear to assert a claim based on the participation theory, concerted tortious activity, or tortious interference with contractual relations. Plaintiff have pled no facts plausibly suggesting an entitlement to relief under any theory.

4. The automatic stay of 11 U.S.C. § 362(a) should be extended to Plaintiffs' action against Mr. Sahakian even though he is a non-debtor. Courts will extend the automatic stay to actions against non-debtors in "unusual

circumstances" when there is an identity of interests between the debtor and non-debtor such that the debtor is the "real party defendant," and a judgment against the non-debtor is really a judgment against the debtor. An example of an "unusual circumstance" is when the non-debtor is entitled to indemnity from the debtor. Extension of the stay is also appropriate where a judgment against the non-debtor defendant could have a preclusive effect in a subsequent litigation against the debtor. Here, if Plaintiffs prevail against Mr. Sahakian, Debtor, pursuant to its Operating Agreement, is obligated to indemnify Mr. Sahakian against the judgment. The adverse judgment could have collateral estoppel consequences for Debtor. Therefore, the automatic stay should be extended to the action against Mr. Sahakian and Count II dismissed.

## CONCISE STATEMENT OF FACTS

The parties and events giving rise to Plaintiffs' Complaint are concentrated exclusively in Pennsylvania. Plaintiff Charan is a Pennsylvania corporation, while Plaintiff Varni is a Pennsylvania limited liability company. (Compl., D.I. 1, ¶¶ 1-2.) Debtor is a Pennsylvania limited liability company with its principal place of business in State College, Pennsylvania. (Purchase & Sale Agreement ("Agreement"), Ex. B to Compl.,

at 1.)   Mr. Sahakian is president and a manager of Debtor.

(Compl. ¶ 4.)   The convenience store at issue is located in

Wilkes Barre, Pennsylvania.   (See Agreement ("Basic Bid

Worksheet," Ex. to Agreement).)

Debtor was organized under the Pennsylvania Limited

Liability Company Act and its members executed an operating

agreement that, inter alia, obligates Debtor to indemnify

its officers, managers, and members.   Section 7.11.2, in

relevant part, provides:

> The Company [Debtor] shall, to the fullest extent
> permitted by applicable law, indemnify and hold
> harmless the Officers of the Company, the
> Managers, [and] Members [("Indemnitees")] from
> and against any losses, claims, damages,
> liabilities or actions, joint or several, to
> which such Indemnitees may be subject by virtue
> of any act performed by such Indemnitee, or
> omitted to be performed by any such Indemnitee,
> in connection with the business of the Company .
> . . and shall reimburse each such Indemnitee for
> any legal or other expenses reasonably incurred
> by such Person in connection with . . . defending
> or preparing to defend any such loss, claim,
> damage, liability or action . . . .

(Am. & Restated Operating Agreement for Green Valley

Acquisition Co., LLC, § 7.11.2, Appendix to Mr. Sahakian's

Motion to Dismiss at A46.)[1]   Additionally, Debtor shall

advance any Indemnitee's litigation expenses.   (Id. §

---

[1] Debtor was named initially "Green Valley Acquisition Co., LLC."
(Operating Agreement § 1.1, at 1.)   After its formation and acquisition
of the Uni-Marts convenience, gasoline, and discount tobacco outlet
stores from Uni-Marts, Inc., Green Valley was renamed "Uni-Marts, LLC."
(Id.; see also id. § 2, at 3, 4, 13 (defining "Acquisition," "Cash
Merger Agreement," "Uni-Marts," and "Uni-Marts Business").)

7.11.4, at 41.) Plaintiffs' claim against Mr. Sahakian implicates these provisions because they are suing him in his capacity as Debtor's president and manager for alleged acts committed or omitted in connection with Debtor's business.

Debtor owns and operates convenience stores. On or about October 19, 2004, Debtor announced it would divest itself of more than 200 convenience stores. (Compl. ¶ 8.) The announcement piqued Plaintiffs' interest. Sometime between October 19, 2004, and December 30, 2004, Debtor prepared and provided to Plaintiffs' officers a "Property Specific Package" ("PSP") setting forth financial information about the Wilkes Barre store. (Id. ¶ 9; see also Ex. A. to Compl.) Along with a store overview, the PSP comprised unaudited financial statements for fiscal years 2001 to 2004. (Ex. A. to Compl.) Dated October 20, 2004, the unaudited financial statements were signed by N. Gregory Patrick, Debtor's chief financial officer. (Id.)

Relying on the PSP, Plaintiffs executed a Purchase and Sale Agreement, dated December 30, 2004, in which they agreed to purchase the Wilkes Barre store's operating assets and real estate for $3.3 million. (Compl. ¶ 9; see also Ex. B. to Compl.) The Agreement contained several representations, warranties, and covenants by Debtor.

Pertinent here is Paragraph 7(b): "To the best of Seller's [i.e., Debtor's] knowledge, the store level profit and loss information made available by Seller to [Plaintiffs] is true and correct in all material respects." (Ex. B. to Compl., ¶ 7(b), at 7.) The Agreement was signed on behalf of Debtor by its vice president Alex D. Sahakian. (Id. at 13.)

On or about March 8, 2005, Debtor supplemented the PSP by providing to Plaintiffs a document titled "Financial Information Update" ("FIU"). (Compl. ¶ 11; see also Ex. C to Compl.) The FIU stated the "actual operating results" for the Wilkes Barre store in calendar year 2004, including the monthly volume of gasoline sold (in gallons) and amount of merchandise sold (in dollars). (Ex. C to Compl.) The FIU purportedly was prepared by NRC Realty Advisors, LLC. (Id.)

Based allegedly on the PSP and FIU, Plaintiffs proceeded to consummate the purchase of the convenience store. (Compl. ¶ 12.) The purchase actually comprised two separate, though related, transactions. In this regard, Charan acquired the store's operating assets for $500,000, plus additional sums for inventory, taxes, and other charges. (Id. ¶ 13.) In connection with that acquisition, Charan allegedly executed certain contracts with Debtor,

including a Trademark Licensing Agreement and a Fuel Supplement Agreement. (Id. ¶ 14.) (These contracts are not attached to Plaintiffs' Complaint.) The transaction between Charan and Debtor closed April 5, 2005. (Id. ¶ 13.) The settlement statement evidencing the closing was signed on behalf of Debtor by its executive vice president Ara M. Kervandjian. (Ex. D to Compl.)

The second transaction concerned Varni's purchase of the real estate in Wilkes Barre where the convenience store is situated. Varni paid $2.8 million, along with $76,002.50 in related charges. (Compl. ¶ 15) That transaction closed July 7, 2005. (Id.)

Plaintiffs allege that the PSP and FIU misrepresented and omitted material facts regarding the Wilkes Barre store's financial condition. (Id. ¶ 17.) Specifically, Plaintiffs allege the PSP "omitted important operating costs such as manager's salary, health and workers' compensation insurance expenses, various taxes, maintenance costs, and other expenses." (Id. ¶ 18.) To support this contention, Plaintiffs attach to their Complaint an undated and unsigned document purporting to be "Debtor's internal 2005 Calendar Year Budget" for the store that lists monthly operating expenses, including certain costs "omitted from the PSP and thereby concealed from [Plaintiffs]." (Id. ¶

19; see Ex. F. to Compl.)  There is no indication in the Complaint when Plaintiffs obtained this document. Plaintiffs also allege, based "[u]pon information and belief," that the PSP and FIU artificially inflated the store's 2004 sales volumes.  (Compl. ¶ 20.)

Plaintiffs allege they justifiably relied on this information.  (Id. ¶ 22.)  Plaintiffs insist they would have refused to purchase the store on the terms and conditions of the Agreement if Debtor had presented an accurate picture of the store's financial condition.  (Id. ¶ 21.)

The Complaint alleges further that Debtor breached the contracts with Charan repeatedly and materially.  (Id. ¶ 25.)  Among other things, Debtor allegedly overcharged Charan for fuel and failed to deliver fuel to the store as required.  (Id.)  Plaintiffs do not specify the frequency of these alleged breaches or when they allegedly occurred.

Plaintiffs filed this action on August 14, 2008. Although their Complaint is replete with references to Debtor's alleged wrongful conduct, Plaintiffs have set forth no facts showing Mr. Sahakian himself misrepresented or omitted material facts regarding the convenience store's financial condition or otherwise was involved in that

transaction or that he was involved in Debtor's alleged contractual breaches.

The Complaint alleges only that "defendants [presumably including Mr. Sahakian] knew or should have known that the profit and loss information provided by the Debtor concerning the [s]tore was materially incomplete, false, and misleading," and that "defendants knew or should have known that purchasers such as [P]laintiffs . . . would rely to their detriment on the Debtor's misrepresentations." (Id. ¶¶ 23-24.) Plaintiffs allege further, without any factual context, that Mr. Sahakian directed, participated with, and provided substantial assistance to Debtor in breaching the contracts and inducing Plaintiffs' acquisition of the convenience store. (Id. ¶ 31.) Based on these paltry allegations, Plaintiffs contend Mr. Sahakian is personally liable to them for substantial, yet unquantified, monetary damages. (Id. ¶ 32.)

<u>**ARGUMENT**</u>

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. SAHAKIAN.**

**A. STANDARD**

Where a defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(2), the standard applied by the Court depends on whether it conducted an evidentiary hearing. If the Court holds a hearing on the question of personal jurisdiction, plaintiff may not rest on the allegations of its complaint but must present evidence and prove, by a preponderance of the evidence, that personal jurisdiction exists over defendant. <u>AstroPower Liquidating Trust v. Xantrex Tech., Inc.</u> (<u>In re AstroPower Liquidating Trust</u>), 335 B.R. 309, 316 (Bankr. D. Del. 2005). But "'[w]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor.'" <u>Id.</u> at 316-17 (<u>quoting</u> <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004)). If the complaint makes a prima facie showing that defendant has sufficient minimum contacts, the burden shifts to defendant to demonstrate the exercise of jurisdiction will

be unreasonable. _Id._ at 317 (citing Grand Ent't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993)).

**B. DISCUSSION**

Federal Rule of Bankruptcy Procedure 7004(f), which addresses personal jurisdiction in bankruptcy adversary proceedings, outlines three requirements that must be met for this Court to exercise personal jurisdiction over Mr. Sahakian: (1) service of process has been made in accordance with Fed. R. Bankr. P. 7004 or Fed. R. Civ. P. 4; (2) subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334(b); and (3) exercising personal jurisdiction is consistent with the Constitution and federal law. Finova Capital Corp. v. Cote (In re Finova Capital Corp.), 358 B.R. 113, 119 (Bankr. D. Del. 2006). Assuming the first two requirements are satisfied, this Court nonetheless must refrain from exercising jurisdiction over Mr. Sahakian because to do so is inconsistent with the Constitution.

The Due Process Clause of the Fifth Amendment delimits the in personam jurisdiction of federal courts. See In re AstroPower Liquidating Trust, 335 B.R. at 317. In that regard, the Due Process Clause imposes "'a general fairness test incorporating [International Shoe Co. v. Washington,

326 U.S. 310 (1945)]'s requirement that certain minimum contacts exist between the non-resident defendant and the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 293 (3d Cir. 1985)). The forum in bankruptcy cases, however, is the United States itself, and thus a "national contacts" analysis is applied to assess the propriety of the Court exercising personal jurisdiction. Id. Upon a prima facie showing by the plaintiff of the requisite minimum contacts, the burden shifts to defendant to present a "compelling case" that other considerations render jurisdiction unreasonable. Id. at 321. This latter determination is informed by several factors: (1) the burden on defendant; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental substantive social policies. Id.; see also Anheuser-Busch, Inc. v. Paques, Inc. (In re Paques, Inc.), 277 B.R. 615, 637 (Bankr. E.D. Pa. 2000).

At the outset, Plaintiffs' Complaint fails to make a prima facie showing that Mr. Sahakian has the requisite

minimum contacts with the United States. There are no allegations, such as Mr. Sahakian's place of residence, from which this Court may ascertain whether personal jurisdiction is appropriate. Because personal jurisdiction is essential to impose a monetary judgment against a defendant, this Court must not conjecture that Mr. Sahakian has sufficient minimum contacts to support personal jurisdiction. Unless Plaintiffs make a prima facie showing, Count II must be dismissed.

That said, even assuming Mr. Sahakian has the requisite minimum contacts with the United States, Count II must be dismissed. Consideration of several factors warrants a finding that exercising personal jurisdiction over Mr. Sahakian violates "traditional notions of fair play and substantial justice."

First, Mr. Sahakian will be burdened unreasonably by having to defend Plaintiffs' lawsuit in Delaware. Mr. Sahakian could not have reasonably anticipated being hailed before a Delaware bankruptcy court to adjudicate tort claims originating in Pennsylvania. The convenience store is located in Pennsylvania, the transactions and events occurred in Pennsylvania, and Plaintiffs and Debtor, the real actors in this drama, are Pennsylvania residents. And while Debtor was a defendant in a class action brought in

2007 by purchasers of other Pennsylvania convenience stores alleging similar misrepresentations and omissions in connection with those transactions, see Eagle Int'l Servs., Inc. v. Uni-Marts, LLC, No. 11-C-2007 (Ct. Com. Pls. Luzerne County), Mr. Sahakian was not named a defendant and thus could not have foreseen being sued by any convenience store purchasers, regardless of the forum. Cf. In re Paques, 277 B.R. at 637 ("[A]t the time of this filing, the defendant was involved in litigation arising out of the A-B construction project. It knew or should have known that such litigation would continue here in this bankruptcy case."). Additionally, the documents, witnesses, and other evidence relevant to Plaintiffs' claim and Mr. Sahakian's defense are located in Pennsylvania. But while Rule 7004(d) authorizes nationwide service of the complaint and other pleadings, it excludes from such authority service of subpoenas. See Fed. R. Bankr. P. 7004(d). As such, Fed. R. Civ. P. 45 applies, see Fed. R. Bankr. P. 9016, and this Court is powerless to compel witnesses to appear on Mr. Sahakian's behalf. Accordingly, this factor weighs heavily against personal jurisdiction.

Second, regardless whether the forum is the United States or Delaware, neither has a genuine interest in adjudicating a dispute where, as here, such dispute

presents a garden variety state tort law action between two non-debtors. Plaintiffs assert no claims under the Bankruptcy Code or other federal law that implicate a federal interest.[2] Moreover, the purposes of Chapter 11 – "preserving the business as a going concern and maximizing the amount that can be paid to creditors," In re Armstrong World Indus., Inc., 432 F.3d 507, 518 (3d Cir. 2005)– will not be served by allowing Plaintiffs to litigate their claim against Mr. Sahakian in this Court. Plaintiffs are concerned only with enriching themselves without regard to Debtor or its creditors. More troubling, however, is that by suing Mr. Sahakian, ostensibly for his own alleged misconduct but in reality for that of Debtor, with knowledge of Debtor's indemnity obligation, Plaintiffs are defying the automatic stay and circumventing the Bankruptcy Code's claims administration process. Viewed from this perspective, Mr. Sahakian and this Court are allied insofar as vindication of their respective interests – due

---

[2] Where bankruptcy courts have rejected challenges to personal jurisdiction, the cases involved claims by or against the debtor or trustee or involved assets of the estate and/or arose under the Bankruptcy Code. See, e.g., In re Finova Capital Corp., 358 B.R. at 115 (reorganized debtor brought adversary proceeding for breach of lease of guaranty); In re AstroPower Liquidating Trust, 335 B.R. at 315 (liquidating trust, in whom debtor's assets were vested upon confirmation of plan, brought claims under the Bankruptcy Code as well as claims under state law, the prosecution of which was provided for in debtor's plan); Klingher v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 288 (Bankr. D. Del. 2004) (action by unsecured creditors committee to avoid preferential transfer).

process and integrity of the bankruptcy system – will be accomplished only by dismissing Count II.

Third, Plaintiffs arguably have an interest in obtaining redress for their alleged damages. But Plaintiffs have not shown that relief is available only in this Court as opposed to, for example, a Pennsylvania court competent in Pennsylvania law. And because Plaintiffs are Pennsylvania residents, prosecuting their claims in Delaware is nonsensical. This factor, therefore, is neutral.

To be sure, judicial efficiency supports this Court's exercise of personal jurisdiction over Mr. Sahakian. If Mr. Sahakian is held liable to Plaintiffs, Debtor may be obligated to indemnify Mr. Sahakian, and that issue can be resolved efficiently by consolidating all actions in this Court. Nevertheless, when balanced against the other factors, modest efficiencies are insufficient to sustain jurisdiction.

In summary, Mr. Sahakian has presented a "compelling case" that exercising personal jurisdiction over him is unreasonable. Because jurisdiction is inconsistent with Fifth Amendment, this Court must dismiss Count II.

## II. PLAINTIFFS' CLAIM AGAINST MR. SAHAKIAN IS BARRED BY PENNSYLVANIA'S TWO-YEAR STATUTE OF LIMITATIONS.

As an affirmative defense, the statute of limitations is pled by a defendant in his answer to the complaint and ordinarily cannot serve as the basis for a Rule 12(b)(6) motion to dismiss. See Fed. R. Civ. P. 8(c)(1); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). Nevertheless, this Court may dismiss a complaint as untimely where "'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Roberson v. Cityscape Corp. (In re Roberson), 262 B.R. 312, 318 (Bankr. E.D. Pa. 2001) (quoting Hanna v. U.S. Veteran's Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Plaintiffs are asserting an unspecified tort claim against Mr. Sahakian. In Pennsylvania,[3] an "action or

---

[3] This Court applies the choice of law rules of the forum when determining the governing law. Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs., Inc.), 304 B.R. 101, 106 (Bankr. D. Del. 2004); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1940). Delaware courts apply the "most significant relationship" test set forth in the Restatement (Second) Conflict of Law. In re Health Integrated Servs., 304 B.R. at 106 (citing Edelist v. MBNA Am. Bank, 790 A.2d 1249, 1255-56 (Del. Super. Ct. 2001)); see also Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del. 1991) (adopting most significant relationship test for tort actions). In determining the state with the most significant relationship to a tort action, the Court considers several contacts: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Travelers Indem., 594 A.2d at 47 (quoting Restatement (Second) of Conflict of Laws § 145(2)).

proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud," must be commenced within two years from the time the cause of action accrued. 42 Pa. Cons. Stat. Ann. § 5524(7); see also id. § 5502(a). "Typically, the two-year period begins to run as soon as the right to institute and maintain a suit arises." Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. Ct. 2004); see also City of Phila. v. Lead Indus. Ass'n, 994 F.2d 112, 121 (3d Cir. 1993).

In this matter, Plaintiffs allege that Debtor misrepresented and omitted material facts in the PSP and FIU concerning the financial condition of the Wilkes Barre convenience store, which they relied on to their detriment by agreeing to acquire the store. Although the transaction closed finally on July 7, 2005, Plaintiffs, in reliance on the PSP, executed the Agreement on December 30, 2004. As Plaintiffs were bound on December 30, 2004, the right to

Consideration of these factors compels the conclusion that Pennsylvania has the most significant relationship to Plaintiffs' claim against Mr. Sahakian. Plaintiffs' injury and the conduct causing Plaintiffs' injury (i.e., the material misrepresentations and omissions) occurred in Pennsylvania. The convenience store at issue is located in Pennsylvania. Plaintiffs and Debtor are business entities organized under Pennsylvania law, and Mr. Sahakian is president and a manager of a Pennsylvania limited liability company. The relationship between Plaintiffs and Debtor, the principal actors, originated and is centered in Pennsylvania. Therefore, Pennsylvania law applies to this action.

maintain or institute suit arose December 30, 2004. See Toy, 863 A.2d at 8. Plaintiffs' action, filed August 14, 2008, is plainly time-barred. But even if the Court construes Plaintiffs' Complaint generously and deems July 7, 2005 – the final closing date – as the date when the cause of action accrued, their action is still beyond the two-year limitations period. Because Plaintiffs' Complaint on its face betrays its untimeliness, Mr. Sahakian's motion to dismiss must be granted.

Mr. Sahakian anticipates Plaintiffs will argue the statute of limitations was tolled and invoke either the discovery rule or the fraudulent concealment doctrine or both. That argument is without merit and must be rejected by this Court.

"'[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied.'" Montanya v. McGonegal, 757 A.2d 947, 951 (Pa. Super. Ct. 2000) (quoting Kingston Coal Co. v. Felton Mining Co., 690 A.2d 284, 191 (Pa. Super. Ct. 1997)) (emphasis added). Here, Plaintiffs' Complaint fails to allege that Mr. Sahakian committed any affirmative independent act of concealment. Therefore, the

statute of limitation cannot be tolled by fraudulent concealment.

The discovery rule is also inapplicable. "Pursuant to the discovery rule, the statute of limitations is tolled until the plaintiff knows, or in the exercise of reasonable diligence should have known, that he/she has been injured and that her injury was caused by another's conduct." Toy, 863 A.2d at 7. In Crouse v. Cyclops Indus., the court elucidated the meaning of "reasonable diligence":

> Reasonable diligence is . . . a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. This Court has long held that there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. That is what is meant by reasonable diligence. Although reasonable diligence is an objective rather than a subjective standard, it is sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question. A plaintiff's actions must be evaluated, therefore, to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.

745 A.2d 606, 611 (Pa. 2000) (quotations and citations omitted).

Here, Plaintiffs allege that the PSP and FIU misrepresented and omitted facts material to their

assessment of the convenience store's financial condition. The PSP and FIU artificially inflated the store's sales volume, while the PSP omitted "important operating costs." Plaintiffs do not indicate when they discovered these misrepresentations and omissions. Nevertheless, had Plaintiffs exercised reasonable diligence, they should have discovered within months after the July 7, 2005, closing that something was amiss.

With respect to the artificially inflated sales data, the FIU depicts sales volumes for gasoline and merchandise on a month by month basis. Accepting as true Plaintiffs' allegation, an individual possessing the attention, knowledge, intelligence, and judgment of a reasonable businessman would have reason to awaken inquiry when the post-closing monthly sales data regularly fell short of the FIU's representations. As for the allegedly concealed operating expenses, it is incredible that Plaintiffs would not have realized their obligation to pay such expenses as manager's salary or insurance costs before August 14, 2006. Indeed, Debtor's internal 2005 Calendar Year Budget, which Plaintiffs reference as revealing certain expenses allegedly concealed by Debtors, sets forth expenses on a monthly basis. Accordingly, Plaintiffs should have known by August or September, 2005, that their operating expenses

included payment of insurance costs or a manager's salary. Because Plaintiffs failed to exhibit the "attention, knowledge, intelligence and judgment which society requires" of business owners, the discovery rule affords them no benefit.

In summary, Plaintiffs' claim against Mr. Sahakian arising from their acquisition of the convenience store is time-barred, and the tolling exceptions are inapplicable. Consequently, Mr. Sahakian's motion to dismiss must be granted.

## III. PLAINTIFFS' COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AGAINST MR. SAHAKIAN BECAUSE THEIR COMPLAINT PLEADS NO FACTS PLAUSIBLY SUGGESTING AN ENTITLEMENT TO RELIEF.

### A. Standard

In deciding a Rule 12(b)(6) motion to dismiss, this Court accepts as true all well-pled factual allegations and construes the complaint in the light most favorable to plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The complaint must satisfy the pleading standard of Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Detailed factual allegations are unnecessary to survive a motion to dismiss, but a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1964-65. The complaint's factual allegations must "'plausibly suggest[]' that the pleader is entitled to relief." Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 322 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965); see also Funches v. Household Fin. Consumer Disc. Co. (In re Funches), 381 B.R. 471, 482-83 (Bankr. E.D. Pa. 2008).

Plaintiffs allege that Mr. Sahakian is "personally liable" for their "substantial monetary damages." Yet, their Complaint is vague and cryptic, and the nature of their claim against Mr. Sahakian is hard to discern. The only notice Plaintiffs afford Mr. Sahakian of their claim is the following conclusory allegation:

> Mr. Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the [c]ontracts [with Charan] and

> tortiously inducing [P]laintiffs . . . to
> purchase the [s]tore.

(Compl. ¶ 31.) Cf. Twombly, 127 S. Ct. at 1970 n.10 ("[A]
defendant seeking to respond to plaintiffs' conclusory
allegations . . . would have little idea where to begin.").
Construed generously, however, this paragraph indicates
Plaintiffs may be asserting one of three theories: (1)
participation theory of liability for corporate officers;
(2) concerted tortious conduct; and (3) tortious
interference with contractual relations. Because
Plaintiffs plead no facts plausibly suggesting an
entitlement to relief under any theory, Count II must be
dismissed.

## B. Participation Theory

A corporation is a legal fiction that operates only
through its officers, directors, employees, and other
agents whose acts, when undertaken within their authority,
are attributed to and binding on the corporation. Daniel
Adams Assocs., Inc. v. Rimbach Publ'g, Inc., 519 A.2d 997,
1000 (Pa. Super. Ct. 1987); see also Am. Film Techs., Inc.
v. Taritero (In re Am. Film. Techs., Inc.), 175 B.R. 847,
854 (Bankr. D. Del. 1994). Such agents are not immune,
however, from liability for harm they cause directly. The
general rule in Pennsylvania is that corporate officers and

directors are accountable for their own wrongdoing. Loeffler v. McShane, 539 A.2d 876, 878 (Pa. Super. Ct. 1988). In this regard, Pennsylvania has adopted the "participation theory" for tort liability. Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). The court in Wicks explained:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

Id.

Accordingly, a corporate officer is liable under the participation theory only for "misfeasance," that is, "the improper performance of an act." Brindley v. Woodland Village Restaurant, 652 A.2d 865, 868 (Pa. Super. Ct. 1995); see also Loeffler, 539 A.2d at 879 (corporate officer liable for ordering subordinate to pay settlement check to unauthorized payee). Conversely, an officer's passive negligence or "'nonfeasance,' i.e., the omission of an act which a person ought to do," will not sustain liability under the participation theory. Brindley, 652

A.2d at 868; see also Shay v. Flight C Helicopter Servs., Inc., 822 A.2d 1, 19 (Pa. Super. Ct. 2003) (defendant not liable where evidence proved only that he failed to inspect work of subordinate). In short, a plaintiff must allege the corporate officer directly participated in the specific tortious conduct at issue. See Shay, 822 A.2d at 19-20.

In this matter, despite Plaintiffs' bald assertion that Mr. Sahakian "participated" in Debtor's misconduct, one searches their Complaint in vein for a single factual allegation plausibly suggesting Mr. Sahakian personally made or otherwise authorized any material misrepresentations or omissions upon which Plaintiffs' detrimentally relied. Moreover, the PSP and FIU, which allegedly contained the misstatements and omissions, were not signed by Mr. Sahakian. At best, Plaintiffs allegations, taken as true, show that Mr. Sahakian knew or should have known that Debtor supplied misleading financial information to Plaintiffs and that Plaintiffs would rely on such information. But Mr. Sahakian's passive negligence is insufficient to hold him liable under the participation theory. Because Plaintiffs plead no facts plausibly suggesting Mr. Sahakian participated in the specific tortious conduct – misrepresenting and omitting material

facts – Count II fails to state a claim for which relief may be granted.

## C. Concerted Tortious Conduct

Pennsylvania recognizes a cause of action for "concerted tortious conduct." <u>See</u> <u>Skipworth ex rel.</u> <u>Williams v. Lead Indus. Ass'n., Inc.</u>, 690 A.2d 169, 174-75 (Pa. 1997); <u>Sovereign Bank v. Valentino</u>, 914 A.2d 415, 421-22 (Pa. Super. Ct. 2006)). Also known as civil aiding and abetting, the tort is addressed in <u>Restatement (Second) of</u> <u>Torts</u> § 876:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

To plead a viable cause of action under section 876, the complaint must allege that defendant committed an act that itself was tortious and undertaken in furtherance of a common plan or design or that facilitated, i.e., substantially assisted, another's tortious objective.

Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003)
(quoting Cummins v. Firestone Tire & Rubber Co., 495 A.2d
963, 969 (Pa. Super. Ct. 1985)); see also Ganter, 914 A.2d
at 423-24 (defendant liable under section 876 for
exchanging checks with bank employee that facilitated bank
employee's misappropriation of bank funds).

Beyond Plaintiffs' incantation in their Complaint of
"substantial assistance" and "common plan," Plaintiffs have
pled no facts plausibly suggesting an entitlement to relief
under section 876. There are no factual allegations from
which this Court may infer that Mr. Sahakian committed a
tortious act in furtherance of a common plan to mislead
Plaintiffs or that he rendered substantial assistance to
Debtor. As the Supreme Court stressed in Twombly, a
"plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of
a cause of action will not do." Twombly, 127 S. Ct. at
1964-65. That Mr. Sahakian knew or should have known that
Debtor misrepresented or omitted material facts and that
purchasers like Plaintiffs would rely on such
misrepresentations does not equate to active encouragement.
Cf. Brandjord v. Hopper, 688 A.2d 721, 724-25 & n.6 (Pa.
Super. Ct. 1997) (passengers in motor vehicle operated by

intoxicated driver not liable under section 876 where plaintiffs adduced no evidence that passengers actively encouraged driver to drink or drive intoxicated; "knowledge of a person's intoxication and failure to restrain that person from driving is not substantial assistance") Consequently, Plaintiffs' claim for tortious concerted conduct must be dismissed.

### D. Tortious Interference with Contractual Relations

Plaintiffs allege that Charan and Debtor entered into certain contracts, including a Trademark Licensing Agreement and a Fuel Supply Agreement, that Debtor allegedly breached repeatedly and materially. To the extent Count II can be construed as asserting a claim against Mr. Sahakian for tortious interference with contractual relations, such claim fails as a matter of law.[4]

"The tort of interference with contract provides that 'one who intentionally and improperly interferes with the

---

[4]Plaintiffs plead no facts plausibly suggesting Mr. Sahakian participated in or substantially assisted Debtor in tortiously inducing Charan to enter into these contracts. Nor can Plaintiffs assert a breach of contact claim against Mr. Sahakian. Plaintiffs have not alleged that Charan negotiated with Mr. Sahakian or that he signed the contracts on behalf of Charan (indeed, Plaintiffs have not attached to their Complaint these alleged contracts). But even if they made those allegations, they still have no cognizable contract claim against Mr. Sahakian. "'Whenever a corporation makes a contract, it is the contract of the legal entity of the artificial being created by the [corporate] charter, and not the contract of the individual members.'" Loeffler, 539 A.2d at 879 (quoting Bala Corp. v. McGlinn, 144 A. 823, 824 (Pa. 1929)). Because the promise breached is the corporation's, not the officer's, only the corporation may be liable for breach of contract. Id.

performance of a contract . . . between another and a third person by . . . causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.'" Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995) (quoting Restatement (Second) of Torts § 766). The tort requires three parties: plaintiff, defendant, and a third party whom plaintiff has entered into a contract. As such, there must be a contract between plaintiff and someone other than defendant. Id. But where, as here, plaintiff contracts with a corporation, no cognizable cause of action exists against the corporation's officers or agents for interfering with the corporation's performance. A corporation acts only through its officers or agents, and therefore, its officers and agents are not considered third parties when acting in their corporate capacity. Id.; see also Daniel Adams Assocs., 519 A.2d at 1002.

In this matter, Plaintiffs allege that Charan entered into multiple contracts with Debtor, but allege no facts plausibly suggesting Mr. Sahakian interfered with Debtor's performance thereunder or otherwise caused Debtor to breach the contract. But even if Plaintiffs alleged such facts, their claim would fail because Plaintiffs have sued Mr.

Sahakian in his capacity as president and manager of Debtor. As such, Mr. Sahakian cannot be regarded as a third party for purposes of tortious interference with contractual relations. Accordingly, Plaintiffs' claim fails as a matter of law, and Count II must be dismissed.

**IV. IN THE ALTERNATIVE, THIS COURT SHOULD EXTEND THE PROTECTIONS OF THE AUTOMATIC STAY TO PLAINTIFFS' ACTION AGAINST MR. SAHAKIAN AND DISMISS THE SAME BECAUSE "UNUSUAL CIRCUMSTANCES" – INDEMNITY AND COLLATERAL ESTOPPEL CONCERNS – WARRANT EXTENDING THE STAY TO AN ACTION ASSERTED AGAINST A NON-DEBTOR.**

Section 362(a) of the Bankruptcy Code prohibits a party from "commenc[ing] or continu[ing] . . . a judicial . . . action or proceeding against the debtor," or taking any action "to obtain possession of property of the estate." 11 U.S.C. § 362(a)(1), (3); see also ACandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 260 (3d Cir. 2006). The automatic stay serves several purposes, including giving the debtor "a breathing spell from creditors by stopping all collection efforts and all foreclosure actions." McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509 (3d Cir. 1997) (citing Maritime Elec. Co. Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d. Cir. 1991)). This breathing spell allows the debtor to attempt a repayment or reorganization plan. Id. Additionally, "[t]he stay also protects creditors by

preventing particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors." Id.

Although the language of section 362(a) stays actions only against a debtor, courts have extended the automatic stay to non-debtor defendants in "unusual circumstances" such as where "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" McCartney, 106 F.3d at 510 (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). For example, the automatic stay will apply to a lawsuit filed "against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." A.H. Robins, 788 F.2d at 999; see also, Plessey Precision Metals, Inc. v. Metal Ctr., Inc. (In re Metal Ctr., Inc.), 31 B.R. 458, 462 (Bankr. D. Conn. 1983) ("[T]he debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate.").

In *In re American Film Technologies*, this Court extended the automatic stay to an action against the corporate debtor's current and former directors that arose from the directors' alleged misconduct occurring within the scope of their employment. Relying on *A.H. Robins*, the Court reasoned that the directors' entitlement to indemnification from the debtor under its charter and by-laws and Delaware law constituted an "unusual circumstance" warranting extension of the stay. 175 B.R. at 848, 853. Similarly, the court in *Eastern Airlines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990), extended the stay to a lawsuit against the corporate debtor's chairman where the corporation's certificate of incorporation required it to indemnify the chairman against expenses and damages resulting from conduct in his official capacity.

The automatic stay will also be applied to actions against non-debtor defendants where a finding of liability against an officer or director could have a preclusive effect, as collateral estoppel, against the debtor. *See In re Ionosphere Clubs, Inc.*, 111 B.R. at 435 (Bankr. S.D.N.Y. 1990) ("[A] finding of liability on the part of its codefendants . . . may be extended to [the debtor], and

collateral estoppel may bar [the debtor] from litigating factual and legal issues critical to its defense.").

Additionally, Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). It is well-settled that bankruptcy courts, under this provision, may extend the automatic stay to "enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts." Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.), 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996); see also A.H. Robins, 788 F.2d at 999-1003 (relying on both the automatic stay provision and the bankruptcy court's equitable powers under § 105 to enjoin actions against non-debtor co-defendants because of the potential impact on the estate).

Here, if Plaintiffs prevail against Mr. Sahakian, the resulting judgment will affect Debtor and its estate. Mr. Sahakian is sued in his capacity as Debtor's president and a manager for acts allegedly committed in connection with Debtor's business. Pursuant to the Operating Agreement, Debtor is obligated to "indemnify and hold harmless the Officers [and] the Managers . . . from and against any

losses, claims, damages, liabilities or actions, joint or several, to which [they] may be subject by virtue of any act performed . . . or omitted to be performed . . . in connection with the business of [Debtor]." (Operating Agreement § 7.11.2.) Mr. Sahakian and Debtor, therefore, share an identity of interests that warrant dismissing Count II.[5] And should Mr. Sahakian be found liable, Plaintiffs could wield such determination in a post-bankruptcy lawsuit against Debtor, who because of agency principles and collateral estoppel would be powerless to defend. See In re Am. Film. Techs., Inc., 175 B.R. at 855 (staying prosecution of claims against former and present directors of debtor corporation because of debtor's indemnification obligations and its possible exposure to collateral estoppel prejudice). Debtor, therefore, has an incentive to participate in this action, notwithstanding the protections afforded it by the automatic stay, which will hinder its ability to reorganize effectively and efficiently under Chapter 11.

---

[5] The fact that willful misconduct or recklessness might vitiate the indemnification obligations of Debtor, (see Operating Agreement § 7.11.2); see also 15 Pa. Cons. Stat. Ann. § 8945(b) (prohibiting indemnification for willful misconduct or recklessness), does not preclude the Court from relying on the indemnification provisions to extend the stay to Mr. Sahakian. In fact, the Court cannot assume Plaintiffs will establish willful misconduct or recklessness and therefore cannot assume that Debtor does not have indemnification obligations. See Am. Film. Techs., Inc., 175 B.R. at 851-52; Sudbury, Inc. v. Escott (In re Sudbury, Inc.), 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992).

Moreover, Debtor will bear the costs of Plaintiffs' claim against Mr. Sahakian. In this regard, Debtor is the "real party defendant" because it has a property interest in the funds that may be used to pay for all fees and costs associated with Mr. Sahakian's defense, as well as any potential judgment or damage award. This property interest is part of the property of the estate, and therefore protected by the automatic stay.

Finally, if Plaintiffs' action against Mr. Sahakian is permitted to continue and discovery allowed to proceed, Debtor's reorganization efforts will be frustrated. "Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization." McCartney, 106 F.3d at 510; see, e.g., Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.), 161 B.R. 891, 899-900 (Bankr. E.D.N.Y. 1993) (enjoining guaranty actions against non-debtor principals of debtor partnerships because principals were the only persons who could effectively formulate, fund, and carry out debtors' plans of reorganization). As president and a manager of Debtor, Mr. Sahakian is vital to the reorganization process. Consequently, the continuation of Plaintiffs' lawsuit

against him will impede his ability to assist in the reorganization efforts.

In summary, this Court should extend the automatic stay to Plaintiffs' action against Mr. Sahakian and dismiss Count II. The indemnity and collateral estoppel concerns constitute "unusual circumstances" that justify extending the stay's protections to a non-debtor defendant. Therefore, Mr. Sahakian requests this Court dismiss Count II.

## CONCLUSION

For the reasons stated, Mr. Sahakian respectfully requests that this Court dismiss Count II of Plaintiffs' Complaint.

Dated: October 3, 2008

BAYARD, P.A.

Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

-and-

Charles J. Ferry, Esquire
Robert J. Tribeck, Esquire
Kathryn D. Sallie, Esquire (No. 4600)
Rhoads & Sinon LLP
M&T Bank Building
Twelfth Floor
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146

Counsel to Henry D. Sahakian