IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> UNI-MARTS, LLC, <br><br> Debtor. | ) Chapter 11 <br> ) <br> ) Case No. 08-11037 (MFW) <br> ) <br> ) <br> ) |
| CHARAN TRADING CORP. <br> and VARNI, LLC <br><br> Plaintiffs, <br><br> v. <br><br> UNI-MARTS, LLC and <br> HENRY D. SAHAKIAN, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Adv. No. 08-51239 (MFW) <br> ) <br> ) <br> ) <br> ) <br> ) |

**BRIEF IN SUPPORT OF DEFENDANT UNI-MARTS, LLC's
MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 7012(b) AND FEDERAL RULE
OF CIVIL PROCEDURE 12(b)(6) OR, IN THE ALTERNATIVE,
PURSUANT TO 11 U.S.C. § 362 (a) AND 11 U.S.C. § 105**

October 15, 2008

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Robert J. Dehney (DE No. 3578)
Thomas F. Driscoll, III (DE No. 4703)
Chad A. Fights (DE No. 5006)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200

HUNTON & WILLIAMS LLP
Tyler P. Brown (VSB No. 28072)
Michael G. Wilson (VSB No. 48927, DE No. 4022)
Jason W. Harbour (VSB No. 68220, DE No. 4176)
Henry P. Long, III (VSB No. 75134)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200

*Counsel for Debtors and Debtors in Possession*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

STATEMENT OF THE NATURE AND STATE OF THE PROCEEDINGS ........... 1

SUMMARY OF ARGUMENT ......................................... 2

CONCISE STATEMENT OF FACTS .................................. 2

ARGUMENT .................................................... 7

    I.    PLAINTIFFS' COMPLAINT IS BARRED BY PENNSYLVANIA'S
        TWO-YEAR STATUTE OF LIMITATIONS ..................... 7

    II.   IN THE ALTERNATIVE, PLAINTIFFS' COMPLAINT SHOULD
        BE DISMISSED BECAUSE IT IS BARRED BY THE
        AUTOMATIC STAY ..................................... 12

SUMMARY ..................................................... 15

# TABLE OF AUTHORITIES

**Cases**

ACands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252 .. 13

City of Phila. v. Lead Indus. Ass'n, 994 F.2d 112 .......... 8

Crouse v. Cyclops Indus., 745 A.2d 606 .................... 11

Edelist v. MBNA Am. Bank, 790 A.2d 1249 .................... 7

Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re
 Coastal Group, Inc.), 100 B.R. 177 ..................... 14

Kingston Coal Co. v. Felton Mining Co., 690 A.2d 284 ..... 10

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 ........ 7

Maritime Elec. Co. Inc. v. United Jersey Bank, 959 F.2d
 1194 ................................................... 14

McCartney v. Integra Nat'l Bank North, 106 F.3d 506 ...... 13

Montanya v. McGonegal, 757 A.2d 947 ...................... 10

Pickett v. Integrated Health Servs., Inc. (In re Integrated
 Health Servs., Inc.), 304 B.R. 101 ...................... 7

Ritter v. Theodore Pendergrass Teddy Bear Prods., Inc., 356
 Pa. Super. 422 .......................................... 9

Toy v. Metro. Life Ins. Co., 863 A.2d 1 ............ 8, 9, 11

Travelers Indem. Co. v. Lake, 594 A.2d 38 ................. 7

**Statutes**

11 U.S.C. § 105 ........................................... 9

11 U.S.C. § 362 ........................................ 1, 8

42 Pa. Cons. Stat. Ann. § 5502 ............................ 5

42 Pa. Cons. Stat. Ann. § 5524 ............................ 5

## STATEMENT OF THE NATURE AND STATE OF THE PROCEEDINGS

On or about, May 29, 2008, Defendant Uni-Marts, LLC ("Debtor") filed its petition under Chapter 11 of the Bankruptcy Code. Plaintiffs filed this adversary proceeding against Debtor and its president and manager, Henry Sahakian, on August 14, 2008, seeking relief from the Defendants based upon alleged misrepresentations and omissions made in connection with Plaintiffs' purchase of a convenience store from Debtor in 2004. Plaintiffs allege that Debtor misrepresented and/or omitted material facts concerning the store's financial condition on which Plaintiffs relied to their detriment to purchase the store. Plaintiffs also allege that, in connection with this purchase, they entered into certain contracts with Debtor that Debtor has breached repeatedly and materially.

Mr. Sahakian filed a motion to dismiss Plaintiffs' Complaint and brief in support on or about October 3, 2008. Debtor hereby files its motion to dismiss and seeks dismissal of Plaintiffs' Complaint for many of the same reasons set forth in Mr. Sahakian's motion to dismiss. Specifically, Debtor seeks dismissal of Plaintiffs' Complaint because it was filed in violation of the automatic stay and outside the Pennsylvania two-year statute of limitations for tort actions.

## SUMMARY OF ARGUMENT

1. Plaintiffs' claims against Defendants arising from Plaintiffs' acquisition of the convenience store are barred by Pennsylvania's two-year statute of limitations applicable to tort claims. Plaintiffs' cause of action accrued no later than July 7, 2004, but this action was not filed until August 14, 2008. Accordingly, Plaintiffs' Complaint is untimely and must be dismissed.

2. The automatic stay of 11 U.S.C. § 362(a) bars Plaintiffs' Complaint, and therefore, the Complaint should be dismissed.

## CONCISE STATEMENT OF FACTS

The parties and events giving rise to Plaintiffs' Complaint are concentrated exclusively in Pennsylvania. Plaintiff Charan is a Pennsylvania corporation, while Plaintiff Varni is a Pennsylvania limited liability company. (Compl., D.I. 1, ¶¶ 1-2.) Debtor is a Pennsylvania limited liability company with its principal place of business in State College, Pennsylvania. (Purchase & Sale Agreement ("Agreement"), Ex. B. to Compl., at 1.) Mr. Sahakian is president and a manager of Debtor. (Compl. ¶ 4.) The convenience store at issue is located at Wilkes Barre, Pennsylvania. (See Agreement ("Basic Bid Worksheet," Ex. to Agreement).)

2

Debtor was organized under the Pennsylvania Limited Liability Company Act and its members executed an operating agreement that, inter alia, obligates Debtor to indemnify its officers, managers, and members. Plaintiffs' claim against Mr. Sahakian implicates these provisions because they are suing him in his capacity as Debtor's president and manager for alleged acts committed or omitted in connection with Debtor's business.

Debtor, either directly or through certain affiliates, owns and operates convenient stores. On or about October 19, 2004, Debtor announced that it intended to divest itself of more than 200 convenience stores. (Compl. ¶ 8.) Sometime between October 19, 2004 and December 30, 2004, Debtor prepared and provided to Plaintiffs' officers a "Property Specific Package" ("PSP") setting forth financial information about the Wilkes Barre store. (Id. ¶ 9; see also, Ex. A. to Compl.) Along with a store overview, the PSP included unaudited financial statements for fiscal years 2001 to 2004. (Ex. A to Compl.) Dated October 20, 2004, the unaudited financial statements were signed by N. Gregory Patrick, the Debtor's chief financial officer. (Id.)

Plaintiffs executed a Purchase and Sale Agreement, dated December 30, 2004, in which they agreed to purchase

3

the Wilkes Barre store's operational assets and real estate for $3.3 million. (Compl. ¶ 9; see also Ex. B to Compl.) The Agreement contained several representations, warranties and covenants by Debtor, including Paragraph 7(b), which provides, "To the best of Seller's [i.e. Debtor's] knowledge, the store level profit and loss information made available by Seller to [Plaintiffs] is true and correct in all material respects." (Ex. B to Compl., ¶ 7(b), at 7.) The Agreement was signed on behalf of Debtor by its vice president Alex D. Sahakian. (Id. at 13.)

On or about March 8, 2005, Debtor supplemented the PSP by providing to Plaintiffs a document titled "Financial Information Update" ("FIU"). (Compl. ¶ 11; see also Ex. C to Compl.) The FIU stated the "actual operating results" for the Wilkes Barre store in calendar year 2004, including the monthly volume of gasoline sold (in gallons) and amount of merchandise sold (in dollars). (Ex. C. to Compl.)

Based allegedly on the PSP and FIU, Plaintiffs proceeded to consummate the purchase of the convenience store. (Compl. ¶ 12.) The purchase actually comprised two separate, though related transactions. In this regard, Charan acquired the store's operating assets for $500,000, plus additional sums for inventory, taxes and other charges. (Id. ¶ 13.) The transaction between Charan and

4

Debtor closed April 5, 2005. (Id. ¶ 13.) In connection with and in addition to the Agreement, Charan executed certain contracts with Debtor, including a Trademark License Agreement and a Fuel Supply Agreement (the "Operating Contracts"). (Compl. ¶ 14.)

The second transaction concerned Varni's purchase of the real estate in Wilkes Barre where the convenience store is situated. Varni paid $2.8 million, along with $76,002.50 in related charges. (Compl. ¶ 15.) That transaction closed July 7, 2005. (Id.)

Plaintiffs allege that the PSP and FIU misrepresented and omitted material facts regarding the Wilkes Barre store's financial condition. (Id. ¶ 17.) Specifically, Plaintiffs alleged the PSP "omitted important operating costs such as manager's salary, health and workers' compensation insurance expenses, various taxes, maintenance costs, and other expenses." (Id. ¶ 18.) To support this contention, Plaintiffs attach to their Complaint an undated and unsigned document purporting to be "Debtor's internal 2005 Calendar Year Budget" for the Wilkes Barre store that lists monthly operating expenses, including certain costs "omitted from the PSP and thereby concealed from [Plaintiffs]." (Id. ¶ 19; see Ex. F. to Compl.) There is no indication in the Complaint when Plaintiffs obtained

5

this document. Plaintiffs also alleged, based "[u]pon information and belief," that the PSP and FIU artificially inflated the store's 2004 sales volumes. (Compl. ¶ 20.)

Plaintiffs allege they justifiably relied on this information. (Id. ¶ 22.) Plaintiffs insist they would have refused to purchase the store on the terms and conditions of the Agreement if Debtor had presented an accurate picture of the store's financial condition. (Id. ¶ 21.)

The Complaint alleges further that Debtor breached the Operating Contracts with Charan "repeatedly and materially" by, among other things, allegedly overcharging Charan for fuel and failing to deliver fuel to the store as required. (Id. at ¶ 25 ) Plaintiffs do not specify the frequency of these alleged breaches or when thy allegedly occurred.[1]

---

[1] Despite making these allegations, Plaintiffs' Complaint does not appear to assert a claim for breach of contract against Debtor. Of course, any breach of contract claim against Debtor is barred by the automatic stay (see discussion in Section II, infra). To the extent, however, the Court does not dismiss the Complaint in its entirety, Plaintiffs should be required to provide a more definite statement of such claim pursuant to Fed. Rule Civ. Proc. 12(e).

# ARGUMENT

I. **PLAINTIFFS' COMPLAINT IS BARRED BY PENNSYLVANIA'S TWO-YEAR STATUTE OF LIMITATIONS.**

Substantially all of Plaintiffs' claims arise from alleged misrepresentations by Debtor and Mr. Sahakian. Specifically, Plaintiffs assert that Defendants tortiously induced plaintiffs and their principals to purchase the Wilkes Barre store. (Compl. ¶ 31.) In Pennsylvania,[2] an

---

[2] This Court applies the choice of law rules of the forum when determining the governing law. Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs., Inc.), 304 B.R. 101, 106 (Bankr. D. Del. 2004); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1940). Delaware courts apply the "most significant relationship" test set forth in the Restatement (Second) Conflict of Law. In re Health Integrated Servs., 304 B.R. at 106 (citing Edelist v. MBNA Am. Bank, 790 A.2d 1249, 1255-56 (Del. Super. Ct. 2001)); see also Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del. 1991) (adopting most significant relationship test for tort actions). In determining the state with the most significant relationship to a tort action, the Court considers several contacts: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Travelers Indem., 594 A.2d at 47 (quoting Restatement (Second) of Conflict of Laws § 145(2).

Consideration of these factors compels the conclusion that Pennsylvania has the most significant relationship to Plaintiffs' claims. Plaintiffs' alleged injury and the conduct causing Plaintiffs' alleged injury (i.e., the material misrepresentations and omissions) occurred in Pennsylvania and Plaintiffs and Debtor are business entities organized under Pennsylvania law. The relationship between Plaintiffs and the Debtor, the

7

"action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortuous conduct or any other action or proceeding sounding in trespass, including deceit or fraud," must be commenced within two years from the time the cause of action accrued." 42 Pa. Cons. Stat. Ann. § 5524(7); see also id. § 5502(a). "Typically, the two-year period begins to run as soon as the right to institute and maintain a suit arises." Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. Ct. 2004); see also City of Phila. v. Lead Indus. Ass'n, 994 F.2d 112, 121 (3d Cir. 1993). Plaintiffs' equitable claim for rescission is also time-barred by the doctrine of laches, which mirrors the two-year statute. See Ritter v. Theodore Pendergrass Teddy Bear Prods., Inc., 356 Pa. Super. 422, 428-29 (1986)(citations omitted)(holding that the rational behind the adoption of statutes of limitations of courts of equity is that an action should not lie in equity if it would be barred by law).

Here, Plaintiffs allege that Debtor misrepresented and omitted material facts in the PSP and FIU concerning the

---

principal actors, originated and is centered in Pennsylvania. Therefore, Pennsylvania law applies to this action.

financial condition of the Wilkes Barre convenience store, which they purport to have relied on to their detriment by agreeing to acquire the store. Although the transaction closed on July 7, 2005, Plaintiffs, in supposed reliance on the PSP, executed the Agreement on December 30, 2004. As Plaintiffs were bound on December 30, 2004, the right to maintain or institute a suit arose December 30, 2004. See Toy, 863 A.2d at 8. Plaintiffs' action, which was filed on August 14, 2008, was filed well after December 20, 2006, and thus, is time-barred. But, even if the Court construes Plaintiffs' Complaint generously and deems July 7, 2005 – the final closing date – as the date when the cause of action accrued, their action is still well beyond the two-year limitations period, and Debtor's motion to dismiss must be granted.

Debtor anticipates Plaintiffs will argue the statute of limitations was tolled and invoke either the discovery rule or the fraudulent concealment doctrine or both. That argument is without merit and must be rejected by this Court.

"'[I]n order for fraudulent concealment to toll the statute of limitations, the <u>defendant</u>, must have committed some <u>affirmative independent act of concealment</u> upon which the plaintiffs justifiably relied.'" Montanya v.

9

McGonegal, 757 A.2d 947, 951 (Pa. Super. Ct. 2000) (quoting Kingston Coal Co. v. Felton Mining Co., 690 A.2d 284, 291 (Pa. Super. Ct. 1997)) (emphasis added). Here, Plaintiffs' Complaint fails to allege that Defendants committed any affirmative independent act of concealment upon which Plaintiffs justifiably relied in delaying their inquiry or investigation of their claim. Therefore, the statute of limitations cannot be tolled by fraudulent concealment.

The discovery rule also is inapplicable. "Pursuant to the discovery rule, the statute of limitations is tolled until the plaintiff knows, or in the exercise of reasonable diligence should have known, that he/she has been injured and that her injury was caused by another's conduct." Toy, 863 A.2d at 7. "Reasonable diligence" is:

> [a] reasonable effort to discover the cause of an injury under the facts and circumstance present in the case. This Court has long held that there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. That is what is meant by reasonable diligence. Although reasonable diligence is an objective rather than a subjective standard, it is sufficiently flexible . . . to take into account the difference between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question. A plaintiff's actions must be evaluated, therefore, to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the

>     protection of their own interests and the
>     interests of others.

Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (quotations and citations omitted).

Here, Plaintiffs allege that the PSP and FIU misrepresented and omitted facts material to their assessment of the Wilkes Barre convenience store's financial condition, namely the alleged "artificially inflated" sales volume and "important operating costs." Nowhere do the Plaintiffs indicate when they discovered these ostensible misrepresentations and omissions. Nevertheless, what is clear is that had Plaintiffs exercised reasonable diligence, they would have discovered within months after the July 7, 2005 closing that something was wrong.

For example, with respect to the alleged artificially inflated sales data, the FIU depicts sales volumes for gasoline and merchandise on a month by month basis. Accepting as true Plaintiffs' allegation, an individual possessing the attention, knowledge, intelligence and judgment of a reasonable businessman would have reason to awaken inquiry when the post-closing monthly sales data regularly fell short of the FIU's "representations." As for the allegedly concealed operating expenses, it is

11

incredible that Plaintiffs would not have realized their obligation to pay such expenses as a manager's salary or insurance costs before August 14, 2006. Indeed, Debtor's internal 2005 Calendar Year Budget, which Plaintiffs reference as revealing certain expenses allegedly concealed by Debtor, sets forth numerous operating expenses related to the Wilkes Barre store on a monthly basis. Accordingly, Plaintiffs should have known by August or September of 2005, that their operating expenses included payment of insurance costs or a manager's salary. Because Plaintiffs failed to exhibit the "attention, knowledge, intelligence and judgment which society requires" of business owners, the discovery rule affords them no safe harbor from the statute of limitations otherwise applicable to their claims.

Accordingly, Plaintiffs' claims that arise from Debtor's alleged fraud in connection with Plaintiffs' acquisition of the Wilkes Barre convenience store are time-barred, and the tolling exceptions are inapplicable. Consequently, Plaintiffs' Complaint should be dismissed.

## II. IN THE ALTERNATIVE, PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE AUTOMATIC STAY

Section 362(a) of the Bankruptcy Code prohibits a party from "commenc[ing] or continu[ing] . . . a judicial .

. . action to obtain possession of property of the estate." 11 U.S.C. § 362(a)(1), (3); see also ACands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 260 (3d Cir. 2006). The automatic stay serves several purposes, including giving the debtor "a breathing spell from creditors by stopping all collection efforts and all foreclosure actions." McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509 (3d Cir. 1997) (citing Maritime Elec. Co. Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991)). This breathing spell allows the debtor to attempt a repayment or reorganization plan. Id. Additionally, "[t]he stay also protects creditors by preventing creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors." Id. This Court previously has held that the automatic stay applies to bar post-petition adversary proceedings that could have been filed in state court had there been no bankruptcy. See Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.), 100 B.R. 177 (Bankr. D. Del. 1989) (citations omitted) (holding that Rule 7001 is not an invitation to sue the debtor on a cause of action which, if brought in state court, would be a blatant violation of the automatic stay).

13

Moreover, if Plaintiffs' action against Debtor is permitted to continue and discovery is allowed to proceed, Debtor's reorganization efforts will be frustrated. Continuation of this action will divert resources and the attention of Debtor's manager and president, Mr. Sahakian from Debtor's reorganization efforts. Thus, Debtor respectfully requests that the Court exercise its powers under 11 U.S.C. § 105 and dismiss Plaintiffs' Complaint.

## SUMMARY

Plaintiffs' claims are subject to a two-year statute of limitations. Because Plaintiffs filed their Complaint well beyond the statute of limitations, their claims should be dismissed. In the alternative, Plaintiffs' adversary proceeding is barred by the automatic stay.

Dated: October 15, 2008

                                **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

                                */s/ Thomas F. Driscoll III*
                                Robert J. Dehney (DE No. 3578)
                                Thomas F. Driscoll III (DE No. 4703)
                                Chad A. Fights (DE No. 5006)
                                Chase Manhattan Centre, 18th Floor
                                1201 North Market Street
                                P.O. Box 1347
                                Wilmington, DE 19899-1347
                                Telephone: (302) 658-9200
                                Telecopier: (302) 425-4673

                                -and-

**HUNTON & WILLIAMS LLP**

Tyler P. Brown (VSB No. 28072)
Michael G. Wilson (VSB No. 48927, DE No. 4022)
Jason W. Harbour (VSB No. 68220, DE No. 4176)
Henry P. Long, III (VSB No. 75134)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

2549781.1