**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNI-MARTS, LLC, | ) | Case No. 08-11037 (MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHARAN TRADING CORP. | ) | |
| and VARNI, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 08-51239 (MFW) |
| | ) | |
| UNI-MARTS, LLC and | ) | |
| HENRY D. SAHAKIAN, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>[1]

    This matter is before the Court on the Defendants' Motions to Dismiss the Complaint filed by Charan Trading Corp. and Varni, LLC (the "Plaintiffs"). For the reasons set forth below, the Court will grant Defendant Sahakian's Motion and deny Defendant Uni-Marts' Motion.

I.   <u>FACTUAL BACKGROUND</u>

    Uni-Marts, LLC (the "Debtor") operates a chain of company-owned and franchise-operated convenience stores throughout the

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

northeastern United States.  Defendant Henry D. Sahakian ("Sahakian") is the president and a manager of the Debtor.  The Debtor, and a number of its subsidiaries,[2] filed chapter 11 petitions on May 29, 2008.

In late 2004, prior to its chapter 11 filing, the Debtor offered for sale a number of its company-owned stores.  The Plaintiffs expressed interest in a store located in Wilkes-Barre, Pennsylvania (the "Store") and received a Property Specific Package ("PSP") which contained relevant financial information. Subsequently, the Plaintiff Charan Trading Corp. ("Charan") executed a Purchase and Sale agreement dated December 30, 2004.

Prior to the sale closing, the Debtor provided a Financial Information Update purporting to reflect the "actual operating results" for calendar year 2004.  On April 5, 2005, the sale to Charan closed and it acquired the operating assets of the Store. Charan also entered into a Trademark License Agreement, Fuel Supply Agreement, Commodity Schedule, and Collateral Deposit Agreement (collectively, the "Contracts") with the Debtor. Plaintiff Varni, LLC ("Varni") acquired the Store's real property on July 7, 2005.

---

[2] The debtors in the underlying, jointly-administered bankruptcy case are Uni Realty of Wilkes-Barre, Inc., Uni-Marts Ohio, LLC, Uni Realty of Wilkes-Barre, L.P., Uni Realty of Luzerne, Inc., Uni Realty of Luzerne, L.P., and Green Valley National Accounts, LLC.

On August 14, 2008, the Plaintiffs filed the instant
adversary proceeding alleging that the Debtor and Sahakian
induced the Plaintiffs to purchase the Store and enter into the
Contracts through either fraud or negligent misrepresentation.
The Plaintiffs seek rescission of the Contracts, damages from
Sahakian, and a declaration that the proceeds of the Debtor's
Director and Officer insurance policy ("D&O policy") covering
liability for Sahakian's allegedly tortious actions is not
property of the estate.

On October 3, 2008, Sahakian filed a Motion to Dismiss the
Complaint.  On October 15, 2008, the Debtor filed a Motion to
Dismiss the Complaint.  The Plaintiffs oppose both Motions.  The
issues have been fully briefed and are ripe for decision.


II.  <u>JURISDICTION</u>

This Court has jurisdiction over this adversary proceeding
pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(A) & (c)(1).


III. <u>DISCUSSION</u>

Sahakian moves for dismissal of the claims against him under
Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure,
which are made applicable to adversary proceedings by Rule
7012(b) of the Federal Rules of Bankruptcy Procedure.  Sahakian
argues that this Court lacks personal jurisdiction over him and

that the Complaint fails to state any claim against him.  He
further asserts that the Court should dismiss the claims because
they were filed beyond the statute of limitations.  Finally,
Sahakian argues that the Court, utilizing its powers under
section 105(a), should extend the automatic stay under section
362(a) to Sahakian and dismiss the Complaint.

The Debtor also moves for dismissal of the claims against
it, because it asserts that the action was filed outside the
statute of limitations.  Furthermore, the Debtor argues that this
action is a violation of the automatic stay under section 362(a)
and should be dismissed.

A.   Personal Jurisdiction

Sahakian moves to dismiss the Complaint against him for lack
of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).

1.   Standard on Rule 12(b)(2) Motion to Dismiss

"[W]hen the court does not hold an evidentiary hearing on
the motion to dismiss, the plaintiff need only establish a prima
facie case of personal jurisdiction and . . . is entitled to have
its allegations taken as true and all factual disputes drawn in
its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97
(3d Cir. 2004).  The Court held no evidentiary hearing on the
motion to dismiss.  Thus, it will base its decision on the
allegations in the Plaintiffs' Complaint.

2.   Personal Jurisdiction in Bankruptcy Court

Bankruptcy Rule 7004(f) provides that:

4

> If the exercise of jurisdiction is consistent
> with the Constitution and laws of the United
> States, serving a summons or filing a waiver
> of service in accordance with this rule or
> the subdivisions of Rule 4 F.R.Civ.P. made
> applicable by these rules is effective to
> establish personal jurisdiction over the
> person of any defendant with respect to a
> case under the Code or a civil proceeding
> arising under the Code, or arising in or
> related to a case under the Code.

Fed. R. Bankr. P. 7004(f).

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure generally limits in personam jurisdiction of the federal courts over non-resident defendants to that which a court of general jurisdiction in the forum state would have.  However, this limitation does not apply where extra-territorial service of process is "authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  Bankruptcy Rule 7004(d), which allows nationwide service of process in bankruptcy cases, is just such a statute. Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.), 835 F.2d 1341, 1344 (11th Cir. 1988) ("Bankruptcy Rule 7004(d) provides for nationwide service of process and thus is the statutory basis for personal jurisdiction in this case . . . ."), rev'd on other grounds, 492 U.S. 33 (1989).

The Fifth Amendment Due Process Clause does circumscribe in personam jurisdiction of the federal courts.  Id.  It imposes "a general fairness test incorporating International Shoe's requirement that certain minimum contacts exist between the

5

non-resident defendant and the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Max Daetwyler Corp. v. Meyer</u>, 762 F.2d 290, 293 (3d Cir. 1985) (quotations omitted) (<u>citing</u> <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).

However, in bankruptcy cases "the forum" is the United States in general, not the particular forum state. <u>Klingher v. Salci (In re Tandycrafts, Inc.)</u>, 317 B.R. 287, 289 (Bankr. D. Del. 2004). Accordingly, the Court will apply a "national contacts" standard, and not merely a "Delaware contacts" standard, in determining whether the Court's exercise of personal jurisdiction over Sahakian is proper.

### 3.   <u>Sahakian's Minimum Contacts</u>

Where a non-resident defendant "purposefully directed his activities at residents of the forum," his contacts with the forum are sufficient to support personal jurisdiction in any "litigation [that] results from alleged injuries that arise out of or relate to those activities." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (quotations omitted). A single transaction with the forum by the plaintiff will suffice. <u>See</u> <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957). The defendant's activity need not take place within the forum so long as it is "intentional conduct . . . calculated to cause injury" to the plaintiff within the forum. <u>Calder v. Jones</u>, 465 U.S.

783, 791 (1984).  See also Burger King, 471 U.S. at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . .").  However, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In this case, the Plaintiffs' Complaint alleges that "Defendant Uni-Marts, LLC . . . is the debtor in this bankruptcy case," (Compl. ¶ 3), and  "Defendant Henry D. Sahakian is president of and a manager of the Debtor."  (Compl. ¶ 4.) Substantively, the Plaintiffs allege that "Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the Contracts and tortiously inducing plaintiffs and their principals to purchase the Store."  (Compl. ¶ 31.)

Because the Plaintiffs' Complaint contains no allegations regarding Sahakian's residence or domicile, Sahakian's minimum contacts must be analyzed as if he were a non-resident of the forum.[3]  Here, the Plaintiffs allege that Sahakian "purposefully

---

[3]   The Plaintiffs argue in their brief that Sahakian is a resident of the United States.  In support of this, the Plaintiffs cite to Sahakian's biographical entry from Wikipedia and the Debtor's Statement of Financial Affairs, which reflects a mailing address for Sahakian in State College, Pennsylvania.

7

directed his activities" at the Plaintiffs, who reside in the forum, and that the current suit "arise[s] out of or relate[s] to those activities." See Burger King, 471 U.S. at 472. The essence of the Plaintiffs' Complaint is that the Debtor provided false and misleading financial statements to the Plaintiffs, which they relied upon in purchasing the Store, located in Pennsylvania, from the Debtor. (Compl. ¶¶ 17-21.) Specifically, the Plaintiffs allege that certain sales documents failed to disclose key operating costs and reported artificially inflated sales figures in an effort to make the property appear more attractive, thus inflating the sale price. (Id.) The Plaintiffs allege that Sahakian "directed" this activity and "provided substantial assistance to" the Debtor in perpetrating the fraud. (Id. ¶ 31.)

While merely entering into a contract with a forum resident may not alone establish minimum contacts, the "real object of the business transaction" including the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may establish minimum contacts. Burger King, 471 U.S. at 479. Here, Sahakian allegedly had extensive contacts with the United States in order

---

However, the mailing address listed on the Schedules is a post office box, which is insufficient to establish Sahakian is a resident of the United States. Furthermore, the Wikipedia entry is not of record in this case and is probably not admissible as evidence. See Fed. R. Evid. 802.

to effectuate the sale of the Store and remained engaged through the executory Contracts related to the sale.  The Plaintiffs allege that they received fraudulent store-specific profit and loss information in late 2004, at the direction of Sahakian. Later, in March 2005, the Plaintiffs contend that Sahakian directed the Debtor to provide updated financial information which fraudulently reported actual operating results from 2004. Since the sale closing, the Plaintiffs allege that Sahakian has directed the Debtor to "repeatedly and materially breach[] its Contracts . . . by overcharging for fuel, failing to deliver fuel as required, and failing to pay or account for credits, discounts, rebates and other sums."  (Compl. ¶ 25.)  Therefore, even if Sahakian was directing this activity from outside the United States, the Plaintiffs allege that he directed tortious activities at the Plaintiffs inside the United States.

Taking the Plaintiffs' allegations as true, the Court concludes that they are sufficient to establish that Sahakian had minimum contacts with the forum.  Thus, the Court concludes that the Plaintiffs have established that the Court has personal jurisdiction over Sahakian with respect to the claims raised in the Complaint.  See Burger King, 471 U.S. at 472.

### 4.   Fair Play and Substantial Justice

The exercise of personal jurisdiction must also comport with "traditional notions of fair play and substantial justice."  Imo

Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).
"The burden on a defendant who wishes to show an absence of
fairness or lack of substantial justice is heavy." Grand Entm't
Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir.
1993). See also Asahi Metal Indus. Co, Ltd. v. Superior Court,
480 U.S. 102, 114 (1987) ("When minimum contacts have been
established, often the interests of the plaintiff and the forum
in the exercise of jurisdiction will justify even the serious
burdens placed on the alien defendant.").

Because the Plaintiffs have made a prima facie case of
minimum contacts, the burden shifts to Sahakian to "present a
compelling case that the presence of some other consideration
should render jurisdiction unreasonable." Id. (quotations
omitted).

> [T]he Court must consider the following
> factors: (1) the burden on [Sahakian] of
> litigating in the United States; (2) the
> interest of the United States in adjudicating
> the dispute; (3) the Plaintiff[s'] interest
> in obtaining the relief sought; (4) the
> interstate judicial system's interest in
> obtaining the most efficient resolution of
> controversies; and (5) the shared interest of
> the several States in furthering fundamental
> substantive social policies.

Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re
Astropower Liquidating Trust), 335 B.R. 309, 321 (Bankr. D. Del.
2005).

Sahakian first argues that he "will be burdened unreasonably
by having to defend Plaintiffs' lawsuit in Delaware [that he]

10

could not have reasonably anticipated being hailed [sic] before a
Delaware bankruptcy court to adjudicate tort claims originating
in Pennsylvania."  Sahakian's argument fails to recognize that
the relevant forum is the United States.  He argues that it is
unreasonable to litigate this suit in Delaware, but perfectly
reasonable to litigate in Pennsylvania.   The inquiry, however,
is whether it is burdensome to litigate in the United States as a
whole.  Sahakian has failed to demonstrate why litigation in the
United States would be burdensome.

Sahakian next argues that "regardless whether the forum is
the United States or Delaware, neither has a genuine interest in
adjudicating . . . a garden variety state tort law action between
two non-debtors."   This argument is similarly misplaced.  The
Debtor is a named party to the suit and its potential liability
for indemnification of Sahakian may impact the Debtor's estate.
The United States has an interest in the efficient and orderly
administration of the Debtor's estate.  Adjudication of state law
claims brought by a resident of the forum against a non-resident
does not, by itself, offend traditional notions of fair play and
substantial justice.

Finally, Sahakian argues that although the Plaintiffs have
an interest in obtaining relief, they "have not shown that relief
is available only in this Court as opposed to . . . a
Pennsylvania court."  Sahakian cites no support for this novel

proposition.  Again, the forum at issue is the United States, not the state of Delaware.  A plaintiff frequently has a choice of forum and venue in litigation.  Due process does not require a showing that a plaintiff is unable to seek relief in the universe of other available forums to permit a plaintiff to proceed in its chosen forum.  It only requires that the exercise of jurisdiction by the chosen forum will not "offend traditional notions of fair play and substantial justice."

Sahakian has failed to carry his burden of establishing that the exercise of jurisdiction over him by this Court "offends traditional notions of fair play and substantial justice." Therefore, the Court will deny Sahakian's motion to dismiss for lack of personal jurisdiction.

B.  <u>Sahakian's Motion to Dismiss for Failure to State a Claim</u>

Sahakian also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

1.  <u>Rule 12(b)(6) Standard of Review</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in a plaintiff's complaint.  <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." <u>Carino v. Stefan</u>,

376 F.3d 156, 159 (3d Cir. 2004).  <u>See also</u> <u>Phillips v. County of</u>
<u>Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (stating that the
Supreme Court in <u>Twombly</u> "also reaffirmed that, on a Rule
12(b)(6) motion, the facts alleged must be taken as true and a
complaint may not be dismissed merely because it appears unlikely
that the plaintiff can prove those facts or will ultimately
prevail on the merits").  All reasonable inferences are drawn in
favor of the plaintiff.  <u>Kost</u>, 1 F.3d at 183.  "The issue is not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims."
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other</u>
<u>grounds by</u>, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982).
<u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000);
<u>Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)</u>, 321 B.R. 128,
134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a
'disfavored' practice . . . .").

    2.  <u>Rule 8(a) Standard of Review</u>

    Rule 8(a) of the Federal Rules of Civil Procedure requires
only that a complaint contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a).  The statement must provide "the defendant fair
notice of what the . . . claim is and the grounds upon which it
rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Put another way . . . Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. . . . [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S.Ct. at 1965 n.3).

### 3. Failure to State a Claim

The Plaintiffs assert that the Complaint states a cause of action against Sahakian under (1) the participation theory of liability for corporate officers and/or (2) a concerted tortious conduct theory.

#### a. Participation Theory

A corporation is a legal entity, acting through its agents. The corporate entity itself is "accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business." Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.), 175 B.R. 847, 854 (Bankr. D. Del. 1994). In addition, corporate

14

officers and directors may be held accountable personally for their tortious conduct.  <u>Loeffler v. McShane</u>, 539 A.2d 876, 878 (Pa. Super. Ct. 1988).  The Pennsylvania Supreme Court has recognized the participation theory of liability:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.
>
> Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance . . . [but] may not be held liable for mere nonfeasance.

<u>Wicks v. Milzoco Builders, Inc.</u>, 470 A.2d 86, 90 (Pa. 1983) (citations omitted).

The Plaintiffs allege in the Complaint that the Debtor fraudulently or through negligent misrepresentation induced the Plaintiffs to purchase the Store and execute the Contracts with the Debtor.  (Compl. ¶¶ 28, 31.)  In support of their claim, the Plaintiffs aver that:

- The Plaintiffs signed a Purchase and Sale agreement for the Store "in reliance on a Property Specific Package ("PSP") . . . prepared and provided by <u>the Debtor</u> concerning the Store."  (<u>Id</u>. ¶ 9.)

15

- "The Purchase and Sale Agreement . . . sets forth the Debtor's representation that 'To the best of Seller's knowledge, the store-level profit and loss information made available by Seller to Purchaser is true and correct in all material respects.'" (Id. ¶ 10.)

- "[T]he Debtor provided 'Financial Update Information' concerning the Store . . . which purports to show 'actual operating results' for calendar year 2004." (Id. ¶ 11.)

- "Thereafter, in reliance on the PSP and the Financial Update Information, plaintiffs purchased the Store." (Id. ¶ 12.)

- "In connection with the closing, Charan entered into certain written contracts with the Debtor." (Id. ¶ 14.)

- "The store-level profit and loss information provided by the Debtor concerning the Store contained material misrepresentations and omitted material facts and was materially false and misleading." (Id. ¶ 17.)

- "In particular, the financial information included in the PSP omitted important operating costs such as manager's salary, health and workers' compensation insurance expenses, various taxes, maintenance costs, and other expenses." (Id. ¶ 18.)

- "The Debtor's internal 2005 Calendar Year Budget for the Store . . . reveals some of these important operating costs, which had been omitted from the PSP." (Id. ¶ 19.)

- "In addition, the PSP and Financial Information Update falsely reported artificially inflated 2004 sales volumes for the Store.  Upon information and belief, the Debtor boosted sales by selling fuel at lower margins than represented; and sales actually made in January 2005 were improperly included in the sales figures reported for December 2004." (Id. ¶ 20.)

(Compl., emphasis added).

The Plaintiffs presented sufficient factual allegations to support the underlying tort claim against the Debtor.  However, the issue raised by Sahakian's motion to dismiss is whether the Plaintiffs have properly supported their claim against him.

In Count II of the Complaint, the Plaintiffs allege that:

> 31.  Mr. Sahakian directed and participated
> with and provided substantial assistance to
> the Debtor and others, pursuant to a common
> plan, in procuring and breaching the
> Contracts and tortiously inducing plaintiffs
> and their principals to purchase the Store.

> 32.  As a proximate result, plaintiffs have
> suffered substantial monetary damages for
> which Mr. Sahakian is personally liable to
> plaintiffs.

(Compl. ¶¶ 31-32.)  The only other factual allegations which
mention Sahakian, directly or indirectly, are the following:

- "Sahakian is president of and a manager of the Debtor."
  (Compl. ¶ 4.)

- "The defendants knew or should have known that the profit
  and loss information provided by the Debtor concerning the
  Store was materially incomplete, false, and misleading."
  (Id. ¶ 23.)

- "The defendants knew or should have known that purchasers
  such as plaintiffs and their principals would rely to their
  detriment on the Debtor's misrepresentations."  (Id. ¶ 24.)

It appears from the Complaint that other officers (not Sahakian)
executed the documents relevant to the sale of the Store and the
Contracts.  (Compl., Exs. A-F.)

In their brief, however, the Plaintiffs argue that Sahakian
"participated" in the tortious conduct allegedly perpetrated by
the Debtor simply by having knowledge of the tortious activities.
The Court disagrees.  "[A]n officer of a corporation who takes no
part in the commission of the tort committed by the corporation
is not personally liable . . . <u>unless he specifically directed</u>

17

the particular act to be done or participated or cooperated therein. . . . [C]orporate officers and directors may not be held liable for mere nonfeasance." Wicks, 470 A.2d 90 (emphasis added).

In this case, the Plaintiffs have failed to allege any facts suggesting that Sahakian actually participated in the Debtor's alleged tortious activities. Instead, the Plaintiffs merely assert that Sahakian knew of the Debtor's tortious conduct in selling the Store to the Plaintiffs. Mere knowledge of the Debtor's activities, without some affirmative act of participation is insufficient to state a claim under the participation theory of liability. See Wolf Designs, Inc. v. DHR & Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable . . . absent other 'unreasonable participation'"). Cf. Wicks, 470 A.2d at 90 (denying motion to dismiss in action to hold directors of land developer liable for selling plaintiffs houses in a basin that floods where complaint alleged the officers "actually knew that the location of [the development] created . . . an unreasonable risk of the drainage problems which occurred and that . . . they deliberately ordered the work to proceed.").

The Plaintiffs argue, nonetheless, that Sahakian's position as president of the Debtor is sufficient to support the claim that Sahakian "directed and participated" in the Debtor's

tortious conduct.  According to the Plaintiffs, the allegations
that (1) Sahakian is the president of the Debtor and (2) Sahakian
"directed and participated" in the Debtor's tortious activities
is sufficient to survive a motion to dismiss.  The Plaintiffs
cite no authority to support such a novel proposition.  The
Supreme Court's recent decision in <u>Twombly</u> specifically
repudiates exactly this type of pleading:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed
> factual allegations, a plaintiff's [Rule 8]
> obligation to provide the 'grounds' of his
> 'entitle[ment] to relief' <u>requires more than
> labels and conclusions, and a formulaic
> recitation of the elements of a cause of
> action will not do</u>.

<u>Twombly</u>, 127 S.Ct. at 1964-65 (emphasis added).

The Plaintiffs respond by noting that "[i]t is entirely
plausible that the president of Uni-Marts 'directed' the
activities of that entity."  Certainly this is true; it is always
conceivable a corporate officer with the authority to manage and
direct all the activities of the corporation may have directed a
certain subset of the corporate activities.  Missing from the
Complaint, however, are any alleged facts that Sahakian <u>actually</u>
exercised this authority and directed the Debtor to provide
misleading financial information to the Plaintiffs.  The
participation theory of liability does not hold that <u>all</u>
corporate officers are liable for <u>all</u> tortious acts of the
corporation; instead an officer is liable only for those he

personally directed.  <u>Chester-Cambridge Bank & Trust Co. v.</u>
<u>Rhodes</u>, 31 A.2d 128, 131 (Pa. 1943).

The Plaintiffs have failed to allege any facts establishing
that Sahakian was personally involved in the Debtor's alleged
fraud and misrepresentation in their purchase of the Store.  "The
need at the pleading stage for allegations plausibly suggesting
(not merely consistent with) [the cause of action] reflects the
threshold requirement of Rule 8(a)(2) that the 'plain statement'
possess enough heft to 'sho[w] that the pleader is entitled to
relief.'" <u>Twombly</u>, 127 S.Ct. at 1966.  Accordingly, the
allegations must plausibly suggest that <u>the defendant</u> engaged in
the alleged conduct.  The Plaintiffs' allegations in the
Complaint are so vague and broad that they could easily apply to
every director and officer in the corporation.  The Court
concludes, therefore, that the Plaintiffs' allegations do not
possess the requisite heft to state a claim against Sahakian
under the participation theory.

b.   <u>Concerted Action</u>

Pennsylvania also recognizes a tort for concert of action.
<u>Koken v. Steinberg</u>, 825 A.2d 723, 731 (Pa. Commw. Ct. 2003).  The
Restatement (Second) of Torts explains this theory:

> For harm resulting to a third person from the
> tortious conduct of another, one is subject
> to liability if he
>
> (a) does a tortious act in concert with the
> other or pursuant to a common design with
> him, or

> (b) knows that the other's conduct
> constitutes a breach of duty and gives
> substantial assistance or encouragement to
> the other so to conduct himself, or
>
> (c) gives substantial assistance to the other
> in accomplishing a tortious result and his
> own conduct, separately considered,
> constitutes a breach of duty to the third
> person.

Restatement (Second) of Torts § 876 (2008).

The Plaintiffs allege that Sahakian "knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading" and that the Plaintiffs would rely to their detriment on the misrepresentations.  (Compl. ¶¶ 23-24.)  Further, the Plaintiffs' Complaint alleges that "Sahakian . . . provided substantial assistance to the Debtor and others."  (Compl. ¶ 31.)  Accordingly, the Plaintiffs argue that they have properly pled a cause of action under the Restatement (Second) of Torts, section 876(b), which requires both knowledge of the other actor's breach of duty and substantial assistance or encouragement.

The Plaintiffs, however, provide no factual allegations to support this conclusory statement.  "Twombly requires that a complaint contain more than just conclusory reiterations of the statutory basis for a claim.  The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.), 2008 WL 4239120, at *4 (Bankr. D.

21

Del. 2008).  Accordingly, the Court finds that the Plaintiffs have failed to state a claim under section 876(b).

The Plaintiffs also allege that Sahakian acted tortiously "pursuant to a common plan" which they argue states a claim under section 876(a).  (Compl. ¶ 31.)  Once again, however, the Complaint fails to contain any supporting facts beyond this conclusory allegation.  Under Twombly, without more, the cause of action fails to state a claim.

Therefore, the Court concludes that the Complaint contains insufficient factual allegations, with respect to Sahakian, to state a claim for concerted tortious activity under either section 876(a) or (b) of the Restatement (Second) of Torts. Accordingly, the motion to dismiss Count II will be granted. This dismissal is without prejudice to the Plaintiffs filing within 30 days an amended complaint which adequately pleads facts to support their claim.

C.   Statute of Limitations

The Debtor and Sahakian both move to dismiss the Complaint for failure to bring the action within the time allowed by the statute of limitations.  In Pennsylvania,[4] the statute of

---

[4]   In deciding which state laws are applicable in the dispute, this Court applies the choice of law rules of the forum state.  Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs.), 304 B.R. 101, 106 (Bankr. D. Del. 2004), aff'd, 233 Fed. Appx. 115 (3d Cir. 2007).  Delaware courts apply the "most significant relationship test" as outlined in the Restatement (Second) of Conflict of Laws.  Id. (citing Edelist v.

limitations for tort claims is two years.  42 Pa. Cons. Stat.
Ann. § 5524(7) ("The following actions and proceedings must be
commenced within two years . . . [a]ny other action or proceeding
to recover damages for injury to person or property which is
founded on negligent, intentional, or otherwise tortious conduct
or any other action or proceeding sounding in trespass, including
deceit or fraud").

The discovery rule, however, provides an exception to the
two-year statute of limitations for fraud.  "[U]nder Pennsylvania
law, when the underlying cause of action sounds in fraud, the
discovery rule tolls the statute of limitations 'until the
plaintiff learns or reasonably should have learned through the
exercise of due diligence of the existence of the claim.'"

---

MBNA Am. Bank, 790 A.2d 1249, 1255-56 (Del. Super. Ct. 2001)).
In a tort action, the "most significant relationship test"
identifies which state has the most interest in a particular tort
claim by analyzing the following factors: (a) the place where the
injury occurred, (b) the place where the conduct causing the
injury occurred, (c) the domicile, residence, nationality, place
of incorporation and place of business of the parties, and (d)
the place where the relationship, if any, between the parties is
centered.  Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del.
1991) (quoting Restatement (Second) of Conflict of Laws §
145(2)).  Here, Pennsylvania has the most significant
relationship to the Plaintiffs' claim against Sahakian.  The
injury and the conduct causing the injury occurred in
Pennsylvania.  The Store is located in Pennsylvania.  The
Plaintiffs and the Debtor are Pennsylvania corporations and
Sahakian is the president and a manager of the Debtor.  The
relationship between the Plaintiffs, Sahakian, and the Debtor
concerns the sale of the Pennsylvania Store and the Contracts
related to the operation of the Store.  Therefore, the Court
concludes that Pennsylvania law applies.

Roberson v. Cityscape Corp. (In re Roberson), 262 B.R. 312, 323
(Bankr. E.D. Pa. 2001) (quoting Beauty Time, Inc. v. VU Skin
Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997)).

   The Federal Rules of Civil Procedure contemplate that the
determination whether a claim is time-barred under the statute of
limitations will typically be made after it is raised as an
affirmative defense in the answer.  See Fed. R. Civ. P. 8(c)(1).
Nonetheless, a claim may be dismissed under Rule 12(b)(6) if "the
complaint facially shows noncompliance with the limitations
period and the affirmative defense clearly appears on the face of
the pleading."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38
F.3d 1380, 1384 n.1 (3d Cir. 1994).  See also Davis v.
Grusemeyer, 996 F.2d 617, 623 n.10 (3d Cir. 1993), abrogated on
other grounds by, Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997)
("We are mindful that the applicability of the statute of
limitations usually implicates factual questions as to when
plaintiff discovered or should have discovered the elements of
the cause of action; accordingly, 'defendants bear a heavy burden
in seeking to establish as a matter of law that the challenged
claims are barred.'" (quoting Van Buskirk v. Carey Canadian
Mines, Ltd., 760 F.2d 481, 498 (3d Cir. 1985))); Guisto v.
Ashland Chem. Co., 994 F. Supp. 587, 594 (E.D. Pa. 1998) ("Thus,
a 12(b)(6) motion should not be granted on limitations grounds
unless the complaint facially shows noncompliance with the

24

limitations period." (quotations omitted)); <u>Stanziale v. Nachtomi</u>
<u>(In re Tower Air, Inc.)</u>, 416 F.3d 229, 242 (3d Cir. 2005) (noting
that "affirmative defenses generally will not form the basis for
dismissal under Rule 12(b)(6)").

In this case, the sale of the Store's operating assets
closed on April 5, 2005. (Compl. ¶ 13.)  The sale of the real
property closed on July 7, 2005. (<u>Id</u>. ¶ 15).  The instant
adversary proceeding was filed on August 14, 2008.  The
Plaintiffs' cause of action is based on alleged false financial
information provided by the Debtor and Sahakian, which induced
the Plaintiffs to purchase the Store.  According to the discovery
rule, the statute of limitations begins to run once "the
plaintiff has discovered his injury or, in the exercise of
reasonable diligence, should have discovered his injury."
<u>Guisto</u>, 994 F. Supp. at 594.

The Debtor and Sahakian argue that, as a matter of law, the
Plaintiffs either discovered, or should have discovered, their
claim in the thirteen-month period between the closing of the
real estate sale on July 7, 2005, and two years prior to the
filing of the Complaint, August 14, 2006.  In other words, the
Defendants argue that there is no plausible explanation for why
it took the Plaintiffs more than a year (during which time they
operated the Store) to discover that the financial information
provided by the Debtor was incorrect.

25

The Court disagrees with the Defendants' argument.  The
Complaint does not suggest, on its face, that the claim was
brought outside the statutory period.  The Complaint does not
mention when the Plaintiffs discovered the existence of the
claim.  Nor does the Complaint contain sufficient facts to make a
determination, as a matter of law, when the Plaintiffs, through
the exercise of reasonable diligence, should have discovered the
existence of the claim.  Accordingly, it is inappropriate at this
stage of the proceedings to dismiss the complaint as time-barred.
See Roberson, 262 B.R. at 323 (declining to dismiss complaint as
time-barred since complaint did not contain sufficient facts to
permit the court to determine when plaintiff discovered, or
should have discovered, existence of claim); Guisto, 994 F. Supp.
at 594 (same).

Accordingly, the Court will deny the Debtor's and Sahakian's
motion to dismiss the Complaint for failure to bring the action
within the time allowed by the statute of limitations.

D.   Automatic Stay

Both the Debtor and Sahakian seek to dismiss the action
because, they assert, it is barred by the automatic stay.
Specifically, the Debtor argues that the action against it is
directly barred by the automatic stay.  Sahakian, as a non-debtor
not protected by the stay, asks the Court to extend the stay to
him and accordingly to dismiss the claims against him.

1.  <u>Action against Sahakian</u>

In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay.  <u>Ochs v. Lipson (In re First Cent. Fin. Corp.)</u>, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999).  "As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor."  <u>McCartney v. Integra Nat'l Bank N.</u>, 106 F.3d 506, 509-510 (3d Cir. 1997) (citations and quotations omitted).

Nevertheless, courts may extend the automatic stay to non-debtor third-parties if "unusual circumstances" are present.  <u>Id</u>. at 510.  The Fourth Circuit, in the seminal case on the issue explained:

> [t]his "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

<u>A.H. Robins Co., Inc. v. Piccinin</u>, 788 F.2d 994, 999 (4th Cir. 1986).

Sahakian argues three "unusual circumstances" exist in this case, which warrant extending the automatic stay to him.  First, Sahakian argues that the Debtor must indemnify him for any monetary damages he incurs in this suit and that a judgment

27

against him is, in effect, a judgment against the Debtor.
Second, Sahakian argues that he is integral to the Debtor's
reorganization efforts and that the time demands of the suit will
hinder the Debtor's reorganization.  Finally, Sahakian asserts
that any findings in the suit may bind the Debtor through
collateral estoppel.  The Court finds these circumstances are not
sufficiently "unusual" to justify an extension of the stay to
Sahakian.

It is true that the Court in A.H. Robins noted an
"illustration" of unusual circumstances warranting extension of
the stay is "a suit against a third-party who is entitled to
absolute indemnity by the debtor."  Id.  See also, Am. Film
Techs., 175 B.R. at 853 (extending the automatic stay to non-
debtor directors and officers in part because "there is an
entitlement to indemnification between the debtor and its
officers and directors"); Eastern Air Lines, Inc. v. Rolleston
(In re Ionosphere Clubs, Inc.), 111 B.R. 423, 435 (Bankr.
S.D.N.Y. 1990), aff'd, 124 B.R. 635 (S.D.N.Y. 1991) (finding the
chairman of the board of directors' indemnification rights
intertwined his interests with those of the debtor, creating a
situation where the debtor was the real party in interest).

Yet the purpose served by extending the stay to directors
and officers indemnified by the debtor must be consistent with
the purpose of the stay itself, to "suspend actions that pose a
serious threat to a corporate debtor's reorganization efforts."

28

First Cent., 238 B.R. at 19.   See also Gerard v. W.R. Grace & Co.
(In re W.R. Grace & Co.), 115 Fed. Appx. 565, 570 (3d Cir. 2004)
(not precedential) ("Rather, courts employ a broader view of the
potential impact on the debtor.  The standard for the grant of a
stay is generally whether the litigation could interfere with the
reorganization of the debtor." (citations and quotations
omitted)).

> The broader rule here is that a debtor's stay
> may extend to a non-debtor only when
> necessary to protect the debtor's
> reorganization.  The threatened harm may be
> to needed debtor funds (e.g., when non-
> debtors are entitled to indemnification) or
> personnel (e.g., when debtor needs the
> services of non-debtors facing crushing
> litigation).  The question is whether the
> action against the non-debtor is sufficiently
> likely to have a "material effect upon . . .
> reorganization effort[s]," that debtor
> protection requires an exception to the usual
> limited scope of the stay.

Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y. 1999) (quoting CAE
Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 34 (S.D.N.Y.
1990)).

Here, under the Debtor's Charter, the Debtor is required to
indemnify Sahakian for any losses related to actions taken in his
official capacity.  Hypothetically, the Plaintiffs' suit against
Sahakian could result in losses to the estate.  However, the
Debtor maintains a D&O policy to cover losses of this type.  The
proceeds of said policy may not actually be part of the estate.
See First Cent., 238 B.R. 17 ("'[D&O] insurance policies are

29

property of the estate . . ., but the question of whether the
proceeds are property of the estate must be analyzed in light of
the facts of each case.'" (quoting In re Sfuzzi, Inc., 191 B.R.
664, 668 (Bankr. N.D. Tex. 1996))).  Given the relatively modest
size of the potential recovery in this adversary proceeding in
relation to the limits on the Debtor's D&O policy (and the fact
that any claim against the Debtor would be a pre-petition claim),
it is difficult to see how the Debtor would sustain any loss,
much less one that would materially impair its reorganization.

Sahakian's argument that the time demands of the suit will
hinder his ability to assist the Debtor in its reorganization
efforts is also unconvincing.  Certainly, diverting critical
management resources from the reorganization effort to litigation
may constitute "unusual circumstances" to justify extending the
stay.  See Ionosphere Clubs, 111 B.R. at 435; Johns-Manville
Corp. v. Asbestos Lit. Group (In re Johns-Manville Corp.), 26
B.R. 420, 426 (Bankr. S.D.N.Y. 1983) ("The massive drain on [key
personnel's] time and energy at this crucial hour of plan
formulation in either defending themselves or in responding to
discovery requests could frustrate if not doom their vital
efforts at formulating a fair and equitable plan of
reorganization.")

In this case, however, the Debtor's chapter 11 case is small
and relatively straightforward, unlike cases such as Johns-

30

Manville or A.H. Robins, which involved many thousands of tort cases. This case is not even a large or complex business reorganization. The limited scope of this adversary action is unlikely to consume significant portions of Sahakian's time or energy. Therefore, the time pressures of this suit do not constitute "unusual circumstances" to justify extension of the automatic stay to Sahakian.

Finally, Sahakian argues that a finding of liability against him may have a preclusive effect in a later proceeding against the Debtor. Thus, he asserts that the Debtor will be prejudiced if the adversary proceeding continues, effectively destroying the protections of the automatic stay. Some courts have found collateral estoppel concerns may justify extending the automatic stay to non-debtors. See Am. Film Techs., 175 B.R. at 848 (extending the automatic stay to enjoin the prosecution of a California state court action against non-debtor directors and officers of the debtor due to collateral estoppel); Ionosphere Clubs, 111 B.R. at 435 ("a finding of liability as to [the] codefendants may be extended to [the Debtor], and collateral estoppel may bar [the Debtor] from litigating factual and legal issues critical to its defense"). But see In re W.R. Grace & Co., 115 Fed.Appx. at 569 n.4 (not precedential) (noting that it is "at least unclear" as to whether collateral estoppel may impact a debtor based upon suits against non-debtor directors and

officers).

In this case, the Court need not decide whether a judgment against Sahakian could have a preclusive effect against the Debtor in some future proceeding. Here, the Debtor is a party to the action already. Furthermore, the action against the Debtor for rescission is premised on the same legal and factual bases as the claims against Sahakian. Because the Court concludes below that the action against the Debtor can proceed, the Court finds that there is no basis to extend the automatic stay to Sahakian. Accordingly, the Court will deny Sahakian's motion to dismiss the Complaint on this basis.

        2.    <u>Actions against the Debtor</u>

Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case . . . [or] any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a). "'The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors.'" <u>Wedgewood Inv. Fund, Ltd. v.</u>

32

<u>Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group,</u>
<u>Ltd.)</u>, 878 F.2d 693, 696 (3d Cir. 1989) (<u>quoting</u> Bankruptcy
Reform Act of 1978, S. Rep. No. 95-989, at 54, <u>reprinted in</u> 1978
U.S.C.C.A.N. 5787, 5840).

In this case, the Plaintiffs seek rescission or cancellation
of the pre-petition executory Contracts with the Debtor and a
judicial determination that the proceeds of the Debtor's D&O
insurance policy covering the claims against Sahakian are not
property of the estate.  (Compl. ¶¶ 29, 35.)  The Debtor argues
that these actions violate the automatic stay and should be
dismissed.

Although the language of section 362(a) suggests that the
automatic stay operates against all proceedings, the majority of
courts hold that "the Code implicitly permits the filing of suit
in the bankruptcy court against a debtor without violating the
automatic stay."  <u>Nat'l City Bank of Minneapolis v. Lapides (In
re Transcolor Corp.)</u>, 296 B.R. 343, 358 (Bankr. D. Md. 2003).
<u>See also</u> <u>Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods,
Inc.)</u>, 12 F.3d 875, 878 (9th Cir. 1993) ("the automatic stay [is]
inapplicable to a suit commenced in the same court where the
bankruptcy was pending"); <u>Prewitt v. N. Coast Vill., Ltd. (In re
N. Coast Vill., Ltd.)</u>, 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992)
("we conclude that the automatic stay does not apply to
proceedings against the debtor in home bankruptcy court");

33

Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns
Corp., 325 B.R. 89, 97 (Bankr. S.D.N.Y. 2005), rev'd on other
grounds, 331 B.R. 93 (S.D.N.Y. 2005) ("because [Plaintiff] sued
on his prepetition claims in this Court, his assertion of those
claims here was not violative of the automatic stay provisions of
Bankruptcy Code sections 362(a)(1) and (a)(3), as would have been
the case if those claims had been asserted elsewhere"); J.T.
Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin.
Corp.), 124 B.R. 931, 940 (S.D.N.Y. 1991) (holding that the
filing of an adversary proceeding is "equivalent to the filing of
claims against the estate and allowable under 11 U.S.C. § 501,
despite the automatic stay").  But see Healy/Mellon-Stuart Co. v.
Coastal Group, Inc. (In re Coastal Group, Inc.), 100 B.R. 177,
178 (Bankr. D. Del. 1989) ("[Plaintiff] has a claim based on a
state-law contract. . . .  It is the typical case which cannot be
filed subsequent to a bankruptcy filing absent relief from stay
for cause.").

     The Court agrees with the reasoning of the majority of
courts to address the issue that the filing of an adversary
proceeding against a debtor in its bankruptcy case can be
equivalent to the filing of a proof of claim and, therefore, does
not violate the automatic stay.  Consequently, the Court
concludes that the Plaintiffs' filing of the instant adversary
proceeding in this Court is not a violation of the automatic

stay.  Accordingly, the Court will deny the Debtor's motion to dismiss the Complaint.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant Defendant Sahakian's Motion to dismiss and deny Defendant Uni-Marts' Motion to dismiss.

An appropriate Order is attached.


Dated: January 12, 2009          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge